THE PEOPLE OF THE STATE OF NEW YORK, on the relation of WILLIS H. ADSIT and others, Commissioners, &c., Respondents, *v.* WILLIAM F. ALLEN, Comptroller of the State of New York, Appellant.

The constitutional requirement, that two-thirds of the legislature shall assent to an appropriation of public moneys for local or private purposes, applies to appropriations for purposes either private or local.

An appropriation is for a local purpose, when the money is to be expended in a particular locality, and the people of that locality are to be directly and mainly benefited thereby, although the public may also be incidentally and remotely benefited.

The appropriation for the improvement of the navigation of the Boquet river (Laws of 1869, chap. 880), is for a "local purpose," and the act having received the assent of less than two-thirds of the legislature, is unconstitutional and void.

(Argued March 26th, 1870; decided June 22d, 1870.)

THIS is an appeal from a judgment awarding a peremptory mandamus, rendered by the Supreme Court, at General Term, in the third judicial district. The decision was made and case agreed upon under section 372 of the Code of Procedure.

The legislature of this State, on the 12th of May, 1869, passed an act entitled, "An act for the improvement of the navigation of the Boquet river," the first section of which is as follows:

"The sum of two thousand five hundred dollars for each year, of the years eighteen hundred and sixty-nine and eighteen hundred and seventy, is hereby appropriated out of the moneys in the treasury belonging to the general fund, not otherwise appropriated, for the purpose of removing obstructions, and improving the navigation of Boquet river, from its mouth to Willsborough falls; which sum of money shall be expended by and under the direction of Willis H. Adsit, of Willsborough, Hamilton N. Towner and Artemus H. Whitney, of Essex, in the county of Essex, commissioners hereby appointed for that purpose."

This act was certified by the president of the senate and the speaker of the assembly, and signed by the governor; but did not receive the assent of two-thirds of the members elected to each branch of the legislature. The relators are the commissioners named in said act. They filed their bond in the form and with sureties as prescribed in said act, which bond was approved by and filed with the comptroller. The relators duly demanded of the defendant, as comptroller, the sum of $2,500, for the purposes specified in the first section of said act. The Bouquet river empties into Lake Champlain, in Essex county. It is, and has been from the earliest settlement of the county, navigable for boats of light burden, used in the transportation of coal, iron and other commodities, from its mouth to Willsborough falls, a distance of not more than three miles. The defendant, as comptroller, refused to pay said amount, upon the ground that the appropriation is for " local or private " purposes, and that therefore the bill should have been passed by a two-third vote, under the provisions of section 9 of article 1 of the Constitution.

*Amasa J. Parker*, for the appellant, insisted that the act was void because not passed by a two-third vote, citing Constitution of 1846, art. 1, § 9; Constitution of 1821, art. 7, § 9; opinion of Talcott, attorney-general, Journal of Senate and Assembly of 1823, p. 577; *Town of Fishkill* v. *F. & B. Plankroad Co.* (22 Barb., 634); and also insisted that the court had no power to compel a State officer to act by mandamus.

*Matthew Hale*, for the respondents, urged that the Bouquet river was a public river and highway. (*Hale de jure maris*, part 1, ch. 2, Hargrave's L. Tracts, 8; *ex parte Jennings*, 6 Cow., 538, note; *Shaw* v. *Crawford*, 10 John., 236, 8; *Morgan* v. *King*, 35 N. Y., 454.) The portion to be improved, navigable, and has been navigated since the first settlement of Essex county. (Watson's history of Essex county, pp. 175, 208, 327.) It is a tributary of Lake Champlain, and the court will take judicial cognizance that the latter is one of

the great thoroughfares of the country. (Greenl. Evi., § 6; *Rouse* v. *Bardin,* 1 H. Bl., 351, 357 ; JOHNSON, J., in *Brown* v. *Scofield,* 8 Barb., 239, 242.) Usage, in numerous appropriations for the improvement of rivers, without a two-third vote, gives construction to the language of the Constitution. (2 Rep., 81 ; Dwarris on Stat., 702 ; Sedg. on Const. L., 255, 6 ; *U. S. Bank* v. *Halstead,* 10 Wheat., 51, 63 ; *Bank of Utica* v. *Mersereau,* 2 Barb., Ch. 530, 577 ; *Fort* v. *Burch,* 6 Barb., 60, 73.) A public act need not be applicable to all parts of the State equally. (*Burnham* v. *Acton,* 4 Abb. N. S., 1 ; *Bretz* v. *Mayor,* 3 id., 478 ; *People* v. *McCann,* 16 N. Y., 58 ; DENIO, J., in *Williams* v. *People,* 24 N. Y., 405.) . This improvement is in fact of the property of the State. (*People* v. *Canal App.,* 33 N. Y., 461 ; *Canal App.* v. *People,* 17 Wend., 620 ; *The Genesee Chief,* 12 How. U. S., 454 ; *The Horn* v. *Trevor,* 4 Wall., 555 ; *The Belfast,* 7 Wall., 624 ; *Carson* v. *Blazee,* 2 Binn., 475 ; *Shrunk* v. *Schuylkill Nav. Co.,* 14 S. & R., 71.) With the policy or expediency of the law the courts have no concern. (Sedgwick on Const., 212 ; *James* v. *Patten,* 2 Seld., 9 ; *In re Powers,* 25 Vt., 265.) The comptroller having placed his refusal solely on the ground of unconstitutionality, mandamus was the true remedy.

EARL, Ch. J.  Section 9 of article 1 of the State Constitution provides, that " the assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes." There was a similar provision in the Constitution of 1821. The bills mentioned in this section are the only ones which require the assent of more than a majority of the members elected to the legislature. It seems to have been deemed important to place a check upon the passage of such bills and to prevent appropriations of the public moneys or property, for local or private purposes, unless such purposes were sufficiently meritorious to command the support of two-thirds of the legislature. It is true, that the legislature must decide in the first instance,

whether a bill is private or local; but its decision is not final, nor conclusive. We cannot enlarge its powers by construction or any decision it may make, or any usage it may adopt. The constitution, as well as the statutes, is the law of this State, and it is the duty of courts to decide upon and construe the former, as well as the latter. When a law is challenged as unconstitutional, under our theory of government it has been very wisely left to the courts of competent jurisdiction, in cases properly pending, to determine the controversy; and this they may do, not only from what appears in the law itself, but from the proofs adduced. It is, however, a safe rule, which requires that it shall clearly appear that the legislature has transcended its constitutional power before its formal enactments shall be declared void, or in conflict with the Constitution.

There is nothing in this act, showing that it was the intention of the legislature to improve, in any way, the navigation or commercial facilities of Lake Champlain. It is merely an act for the improvement of the navigation of the Bouquet river. The act does not disclose the character of the river, its length, to what extent it is navigable, nor to what extent the proposed improvement would make it navigable, and useful to the public. And the courts cannot take judicial notice of its character. Its name is not found upon the general maps of the State; it is not found in any general history of the country, and its character is in no way defined in any public statute. And it is not of such notoriety, as to be known generally to the people of the State; and hence the courts can take no more notice of its character and existence, than of the character, location, and usefulness of the ordinary public highways of the State. In this respect, it is unlike the great rivers and lakes of the State, and the mountain ranges, which are matters of general history and public notoriety. All we know, then, about this river is what appears in the case submitted, that it empties into Lake Champlain, in Essex county, and is, and has been from the earliest settlement of the county, navigable for boats of light

burden used in the transportation of coal, iron, and other commodities, from its mouth to Willsborough falls, a distance of not more than three miles. To bring a bill within this constitutional provision, requiring a two-thirds vote, the purpose of the appropriation must be *either* private or local. It need not be both. It may be private and not local, or it may be local and not private. In this case, the purpose was not private; it was to improve a navigable stream, and all persons who chose had the right to use the stream, to the extent of the proposed improvement, for the purpose of navigation. But while this appropriation was not for a private purpose, I am well satisfied that it was for a local one. The improvement was to be made, and the money expended in a very limited locality, and this must obviously determine its local character, unless there was something in the circumstances surrounding it, giving it general importance and rendering it non-local.

The improvement was in no way necessary or important for the navigation of Lake Champlain. So far as we can discover, it would add nothing to the tonnage or commerce of that lake. Its sole purpose seems to have been to save the expense of land carrying to the people living at or near Willsborough falls for the brief distance of not more than three miles. The appropriation might thus be claimed to be for a local purpose, even within the very strict and narrow definition used by the counsel for the relators upon the argument in this court, which was in these words: "Whenever the *direct* benefit is to be purely and exclusively local, the purpose is local, and the fact that the general public may *incidentally* be benefited did not make the purpose a general one." Here, it seems to me, it cannot well be disputed that the direct benefit would be exclusively for the people living at or near the falls and the few persons navigating the lake, who, with small boats, might wish to go upon the river, would be incidentally and remotely benefited, as they could carry their freight to and from the falls without taking

or discharging it at the mouth of the river or some other point at the shore of the lake.

This is unlike any of the improvements that have been authorized on the Hudson river. That is a river navigable for about 150 miles, forming a necessary link in the chain of water communication between the ocean and the great lakes. It acts an important part in the commerce of the whole State, and the citizens of the State generally are interested in its navigation. An improvement made in its navigation, at any point, would not be mainly or materially for the benefit of the people living at or near that point, but would be for the benefit of the entire commerce of that great river and of the commerce of the whole State. The purpose of the appropriation in this bill is as much local as if it had been made for the purpose of improving a public highway upon land for the distance of three miles from the lake. Such an appropriation would be sought only by the people living in the locality, and would be mainly and directly for their benefit. The whole public would have the right to travel upon the highway, and might thus be said to be incidentally benefited; and while this might show that it was not for a private purpose, it would have no tendency to show that it was not for a local one.

All appropriations for local improvements which are not at the same time private, would be, in a certain remote sense, beneficial to the public, as any portion of the public could have the benefit of the appropriations by going to the locality where the improvements were made; and if this circumstance would strip the improvements of their local character, then no appropriation could be said to be for a local, unless it was also for a private purpose, and violence would thus be done to the language of the constitutional provision under consideration. I think an appropriation of money by the legislature must generally be regarded as for a local purpose, when the money is to be expended in a particular locality, and the people of that locality are to be directly and mainly benefited, notwithstanding the public are incidentally

and remotely benefited also. It may safely be assumed that the appropriation in this case was sought for only by the people of the locality and was made for their benefit, and that it never would have been made, if the interests of the general public alone had been consulted.

It is doubtless true, that this provision of the Constitution has been frequently violated; that many bills appropriating the public money for local purposes have been passed without the requisite vote of two-thirds. This provision was in these cases overlooked or misconstrued. But these bills have generally passed unchallenged; and this, I believe, is the first time when this question has been directly raised in the courts. No length of usage can enlarge legislative power, and a wise constitutional provision should not be broken down by frequent violations.

The judgment must therefore be reversed, and judgment ordered for the defendant with costs.

All concur for reversal, except HUNT and SMITH, JJ., who were for affirmance.

Judgment reversed.