THE WATERLOO WOOLEN MANUFACTURING COMPANY, RESPONDENT, *v.* JAMES SHANAHAN, AS SUPERINTENDENT OF PUBLIC WORKS, JAMES SHANAHAN, INDIVIDUALLY, WILLIAM L. SWEET, JUSTIN B. H. MONGIN AND GEORGE COOK, APPELLANTS, IMPLEADED, ETC.

*Public officer — acting under an unconstitutional statute — liability of, to an individual damaged.*

Where the superintendent of public works makes a contract for the dredging and excavating of the channel of a river, which is a public highway, in accordance with the provisions of an unconstitutional statute, he is properly made a party

defendant individually, in an action, brought by a person whose rights are affected by such work, to restrain the execution thereof and for damages.

In such case, as the act under which the superintendent makes the contract is unconstitutional and void, the superintendent cannot invoke its protection in defense of his action in contracting for and making the improvements contemplated thereby to the prejudice of the plaintiff.

In such case the superintendent is acting outside of his official authority, and his official position affords him no protection in so doing.

APPEAL by the defendant James Shanahan, as superintendent of public works, and James Shanahan, individually, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Seneca on the 31st day of August, 1890; also an appeal by the defendants William L. Sweet, Justin B. H. Mongin and George Cook, upon questions of law and upon facts, from the same judgment.

The action was brought to obtain a judgment enjoining and restraining the defendants, their servants and agents, from digging, dredging or altering the bed or channel of the Seneca river, or interfering with the plaintiff's right to the same, and to recover the damages which the plaintiff might sustain in consequence of the doing of such acts by the defendants.

*Charles A. Hawley,* for appellants, Sweet, Mongin and Cook.

*Charles F. Tabor,* attorney-general, for James Shanahan, as superintendent of public works, and James Shanahan, individually.

*Frederick L. Manning,* for plaintiff and respondent

CORLETT, J.:

In 1798 Samuel Bear became the owner of lan_ on the south side of the Seneca river, along which he dug a race to a mill. This race leaves the river at the larger or eastern end on Big Island. Seneca river flows from the outlet of Seneca lake, at the village of Geneva, easterly through the villages of Waterloo and Seneca Falls, and finally empties into the Oswego river. It divides the village of Waterloo, one ward being south of the river, the other north. The land on the north side of the river was patented by the State to John McKinstry in 1802, and contained 640 acres, which was conveyed by him to Elisha Williams on the 3d of December, 1807

Before the 6th day of April, 1813, Williams constructed a race or canal for hydraulic purposes, and erected one or more mills on the site now occupied by the plaintiff's factories, adjoining the river. The race conveyed the waters from the river to the mills, furnishing their motive power. The race was on the north side of Big Island, which divides its flow, its main current being south of the island.

The lands owned by Bear on the south side amounted to 100 acres, who continued its owner until 1826. On the 6th day of April, 1813, the Seneca Lock Navigation Company was incorporated. (Session Laws, chap. 144 of 1813.)

On the 20th of April, 1825 the legislature authorized the construction of the Cayuga and Seneca canal. The act provided for the purchase by the State of all the rights and title of the Seneca Lock Navigation Company. (Session Laws of 1825, chap. 271.) The State simply acquired the rights of the Seneca Lock Navigation Company, and no others.

The plaintiff was incorporated in 1836, and is the owner of all the water-power and privileges which Williams had in his lifetime, with the exception of one run of stone. Its property, consisting of large buildings and machinery, is valued at $250,000; employs three hundred men in the manufacture of woolen goods. Its average insurance is about $350,000. A protection of the property insured requires the use of force pumps propelled by water.

Bear race is now owned by the defendants, Sweet, Mongin & Cook. Their mill is at the end of it, and their title was derived by mesne conveyances from Bear. The mill is on Washington street, in Waterloo, and the race draws its water from the south side of Seneca river, They obtained title three or four years ago, paying for the mill, lands and water privileges, $9,000.

The canal of the Seneca Lock and Navigation Company was originally of the width of forty feet, and three or four feet deep. In 1840 an act was passed authorizing improvements of the Cayuga and Seneca canal, which expressly provided that the rights and interests of persons owing or holding hydraulic privileges on the outlet should not be injured by such improvements. Prior to 1857 this canal was enlarged and deepened until its present dimensions are seventy feet on the surface, with a depth of from seven to nine feet. There has been no increase in size or depth since 1857, but

by the previous enlargement the amount of water taken into the canal was greatly increased. The plaintiffs now own twenty-eight-thirtieths of the water-power and its appurtenances.

Before 1888 Bear race always remained at its original dimensions, twenty-feet wide, and three and one-half feet deep. Neither Bear race or the Seneca river, at the place where the race leaves it, constitute any portion of the canal system of the State of New York. The race and lands on each side of it are private property, now owned by the defendants, Sweet, Mongin & Cook. The plaintiff, since it became the owner of its property, has always claimed the right to use, and has used, for its own purposes all the surplus waters flowing from the canal that supplies their mills, not necessary for navigation. This user has continued for more than twenty years before the commencement of this action, and was always acquiesced in by the canal authorities.

On the 18th day of May, 1888, chapter 325 of that year became a law. It provides as follows: "The superintendent of public works is hereby authorized, in his discretion, to expend the $15,000, or so much thereof as may be necessary, which were appropriated by chapter 113 of the Laws of 1887, and directed therein to be applied to improvements on the Cayuga and Seneca canal, towards dredging and excavating the channel of the Seneca river, from its intersection with said canal in the village of Waterloo, to the old Bear race, and thence towards dredging and excavating the said race to Washington street in said village so as to admit the passage of canal boats therein from said canal."

This act was passed by a three-fifths vote, but did not receive a two-thirds vote of the members of either house of the legislature. In pursuance of the provisions of this act, the defendant Shanahan, who was and still is superintendent of public works, made a contract with the defendants Fuller and Albaugh for the performance of the work specified in the act. They were engaged in its construction and had the work partly completed when this action was commenced. If the contract is finished, Bear race will be considerably more than thirty feet wide and deeper than at present, and will draw from the Seneca river an amount of water much larger than now, and will greatly diminish the surplus in the canal, to which the plaintiff is entitled.

On the trial the facts above stated, with others, were found by the court. The court also determined, among other things, as questions of law, that chapter 325 of the Laws of 1888, appropriating the moneys for the improvements of Bear race was a local act, and not having received a two-thirds vote of either house of the legislature, was unconstitutional and void; also, that the purpose for which the race was to be improved was not public but private, and that, by the improvement, the water-power of the plaintiff would be seriously diminished and impaired, and its value greatly reduced; also, that the effect of the act is to take the property of the plaintiff for a private purpose, and was void for that reason.

There is no question about Seneca river being a public highway. If the trial court was right in its conclusion that the act of 1888 was void, all difficult questions are eliminated from the case. The pivotal facts involved in a determination of this question are within a narrow compass. As between the plaintiff and the State there was neither doubt or confusion until that act.

In the *Silsby Manufacturing Company* v. *The State of New York* (104 N. Y., 562) chapter 144 of the Laws of 1813, above cited, and chapter 271 of the Laws of 1825, were construed. The court held that the State, having acquired "the stock, property and privileges belonging or appertaining to" said company, and only that, has no authority to use any more of the waters of said river than are necessary for the purposes of navigation, and has the right to use them only for that purpose. No question arises upon the evidence as to Bear race, or its ownership, including the lands on each side; it was private property. But chapter 325 of the Laws of 1888 not only provides for excavating the channel of the river, but also for dredging and excavating Bear race to Washington street, in that village. To that extent, therefore, the act provided for work by the State upon private property without title in the State or provision in the act for acquiring it.

In the *People* v. *Allen* (42 N. Y., 378), construing chapter 880 of the Laws of 1869, it was decided, upon facts no stronger than those appearing on behalf of the plaintiffs in this case, that the act was for local purposes, and not having received a two-thirds vote was unconstitutional and void. It is impossible to distinguish the principle decided in that case from the one involved in the case at

bar    To the same effect are *People* v. *Supervisors of Chautauqua* (43 N. Y., 10); *Matter of Deansville Cemetery Association* (66 id.,· 569), where it was also held that the question whether private property is sought for public use is a judicial one to be determined by the courts.    On the same point is *Matter of Niagara Falls and Whirlpool Railway Company* (108 N. Y., 375).

The principle involved in this case has been adjudged in numerous decisions arising upon a great variety of facts.    (*Jordan* v. *Woodward*, 40 Me., 317; *West River Bridge Co.* v. *Dix*, 6 How. [U. S.], 507–547.)    The trial court logically considered and determined this branch of the case.    The use of this money was obviously for a private and not public purpose.

The learned attorney-general in his exhaustive brief argues, with force and cogency, that Shanahan, as superintendent being a public officer, could have no adjudication against him in this action.    His contention would be unanswerable if he was acting in that capacity.    When it appears that there is no law authorizing this contract, the fact of his occupying a high public position is immaterial.    (*People of New York* v. *Canal Board of New York*, 55 N. Y., 390; *Tribune Assn.* v. *The Sun*, 7 Hun, 175.)

In this case the act under which the superintendent made the contract being unconstitutional and void, the superintendent could not invoke its protection in contracting and making improvements to the prejudice of the plaintiff.    He was acting outside of his official authority, and his official position is no protection.

The learned counsel for the appellant argues, with much pertinacity and ability, that although the act as framed might fall short of being a public one, yet as its recitals indicate that it was only part of a legislative scheme, subsequent laws would make it complete for public purposes ; that, therefore, it was not private but public.

One difficulty with the argument is that there is nothing in the act to show that there will be future legislation ; another, and perhaps more serious one, is that public policy, in the very nature of things, is adverse to piecemeal legislation of that character.    If an act on its face which is not public can be upheld because future acts may make it so, great mischief might result.    Constitutional prohibitions might be evaded and overthrown by gradual and indirect approaches. None of the rulings of the trial court to which exceptions are taken involve questions which would change the result.

There is no controversy between the plaintiff and the State out-side of the act of 1888. That being a nullity, any action which would impair the value of the plaintiff's property never has been, and it is presumed never will be, taken by the State.

The defendants, Sweet, Mongin & Cook, insist upon appropriating the supposed rights of the State for their benefit. It is enough to say that there being no controversy between the State and the plaintiff, these defendants are in no position to avail themselves of the benefit of such supposed rights.

The judgment must be affirmed.

DWIGHT, P. J., and MACOMBER, J., concurred.

Judgment appealed from affirmed, with costs.