The Waterloo Woolen Manufacturing Company, Respondent, *v.* James Shanahan, as Superintendent, etc., et al., Appellants.

| | |
|---|---|
| 128 | 345 |
| 155 | 290 |
| 155 | 435 |
| 128 | 345 |
| 156 | 584 |
| 128 | 345 |
| 160 | 389 |

The general improvement of those public highways of the state, its canals and its navigable rivers, is for the benefit of the public at large, although some locality or individual may be benefited more than others.

Although an expenditure authorized by the legislature for such an improvement may be improvident or the work prove useless to the public, it may not be assailed in the courts at the suit of a private individual. The legislature, as the depository of the sovereign power of the people, is the exclusive judge of the propriety of the expenditure or the utility of making it.

*It seems* that generally the question as to whether the use to which private property is proposed to be devoted by legislative power is public or private, is a judicial one and the courts are not concluded by any declaration of the law-making power as to the nature of the use.

*It seems* also that where the legislature appropriates public money for some improvement, the courts may inquire whether the improvement is for a purpose which is public or one merely private or local, and if the purpose is private or local, whether the bill received the requisite two-thirds vote.

The question, however, as to the nature of the purpose, must be determined by the language and general scope of the act; the judicial inquiry must be confined to the face of the bill itself and to things that are the subject of judicial notice.

Where, therefore, the purpose declared in an act appropriating public money is a public one, the courts have no power, upon a suggestion that

the professed purpose was not the real one, to institute an inquiry upon the testimony of witnesses, and to determine the purpose as a matter of fact.

The courts cannot inquire into the motives and purposes of the legislature in order to attribute to it a design contrary to that clearly expressed or fairly implied in its enactment. It must be assumed that the legislature acted in good faith and meant what the bill expressed, although it may be possible to show, outside of its language and terms, that in fact all or the larger part of the benefits following the expenditure will inure to a few individuals.

In an action to restrain the state officials and contractors with them from doing work authorized by the act of 1888 (Chap. 325, Laws of 1888), entitled " An act to provide for the dredging and excavating the channel of Seneca river and the old Bear race * * * to facilitate the passage of canal boats," which action was based upon the ground that the declared purpose of the act was not the real one, but that it was in fact simply for the benefit of individuals, and so was void, as it appropriated public money for a local and private purpose and did not receive the assent of two-thirds of either house of the legislature (State Const. art. 1, § 9), the court, against the defendants' objection and exception, entered into an inquiry in regard to the purpose of the appropriation, and after receiving the testimony of witnesses, found as a fact that the improvement could not benefit the canal, but would benefit the property of individuals, and that the purpose of the appropriation was not public, but private. *Held*, error; that the purpose expressed in the act was public, and even if the expenditure might be improvident and the work useless to the public, of its propriety and utility the legislature was the judge; that it could not be said that the state authorities were not proceeding in good faith, the more particularly as the legislature in 1889 (Chaps. 461 and 493, Laws of 1889) reappropriated the money to the same improvement, increasing the amount.

It appeared that prior to the passage of the act, the state had diverted the waters of said river into the Cayuga and Seneca canal, and so deprived riparian owners, on the south side of the river, of its use. *Held*, assuming that the court had power to make the inquiry and that the purpose of the act was, as was claimed by plaintiff, to restore a portion of the water so diverted to its original channel and the use of said owners, the purpose of the expenditure was public, not private or local, within the meaning of the Constitution, and so, that the act was valid.

The court below also held the act to be invalid, because the effect was to take the plaintiff's property for private purposes. This determination was based solely upon the fact that the improvement would divert from the canal and restore to the channel of the river, water, the use of which plaintiff had enjoyed without question for more than twenty years, he having no property right therein save as acquired by such user. *Held*, error; that the use by the plaintiff of the water beyond what it was

entitled to, however long continued, and whether adverse or by permission, could not impair the rights of the state; and that, so long as the legal rights of the plaintiff, as between it and the state, were respected, it could not complain.

Also *held*, that if plaintiff could establish any right to the use of the water that would be diverted by the improvement, the consequence would be an injury which would form the basis for a claim for damages or compensation before the tribunal authorized by the state to hear such claims, but would furnish no ground for an injunction; that the execution of the work did not involve the taking of any of plaintiff's property for any purpose, public or private.

Property required by the state for canal purposes may be taken in a summary way without the aid of judicial proceedings; the title or the right to the use may be acquired at any time, and need not be obtained in advance,

*Waterloo Woolen Mfg. Co.* v. *Shanahan* (58 Hun, 50), reversed.

(Argued June 22, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Charles F. Tabor, Attorney-General,* for appellant James Shanahan. Whether chapter 325 of the Laws of 1888, appropriated money for local or private purposes only, is a question for the courts to determine. (*In re D. C. Assn.*, 66 N. Y. 569.) Private property cannot be taken by eminent domain for private purposes either with or without compensation. (*S. M. Co.* v. *State*, 104 N. Y. 562.) Chapter 325 of the Laws of 1888 is constitutional. (Const. art. 3, §§ 20, 21; art. 7, § 8.) The propriety or the necessity of taking private property for public use is not a judicial question, but one of political sovereignty, to be determined by the legislature, either by itself or by delegating the power to public agents in such manner and form as it may prescribe. (*People* v. *Herrick*, 21 N. Y. 595; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 73;

*Varick* v. *Smith*, 5 id. 159; *Bloodgood* v. *M.*, etc., *R. R. Co.*, 18 Wend. 9; *Haywood* v. *Mayor*, etc., 3 Seld. 324; *In re Townsend*, 39 N. Y. 174; *R. & S. R. R. Co.* v. *Davis*, 43 id. 142; *People* v. *Budd*, 117 id. 25; *Amy* v. *Watertown*, 130 U. S. 319.) The appropriation made by chapter 525 of the Laws of 1888, so far as it provides for the improvement of the channel of Seneca river, and dredging and excavating Bear race, " so as to admit the passage of canal boats therein from said canal," is not, within the meaning of the Constitution, for a private purpose. (*Head* v. *Amoskeag Manufacturing Co.*, 113 U. S. 19; *In re Village of Middletown*, 82 N. Y. 196; *People* v. *McCann*, 16 id. 58.) Neither is it a local act, within the meaning of the Constitution. (*People ex rel.* v. *Bd. Suprs.*, 43 N. Y. 10; *Healy* v. *Dudley*, 5 Lans. 115, 120; *Williams* v. *People*, 24 N. Y. 405; *People ex rel.* v. *Squires*, 107 id. 593, 601; *People* v. *Allen*, 42 id. 378.) If the act of 1888 contemplated the taking of any waters by the state or of the land under the water, which belonged to the plaintiff, then the act is still valid. Ample provision has been made for compensation within the meaning of section 7 of article 1 of the Constitution. (*Rexford* v. *Knight*, 11 N. Y. 313; *S. M. Co.* v. *State*, 104 id. 562; *Benedict* v. *State*, 120 id. 228; Laws of 1883, chap. 205, § 13.) So far as Bear race is concerned, the court found that the defendants, Sweet, Mongin & Cook, were the owners thereof. Therefore, they could and did waive any constitutional objection that the act of 1888 made no provision for compensation as to them; and the plaintiff here cannot raise that question. (*Town of Pierpont* v. *Loveless*, 72 N. Y. 211; *Sinclair* v. *Jackson*, 8 Cow. 543, 579; *Baker* v. *Braman*, 6 Hill, 47; *In re Mayor*, etc., 99 N. Y. 509.) As against this plaintiff, therefore, it cannot be said that either Sweet, Mongin & Cook, or the superintendent of public works had done anything or proposed to do anything with the waters of the Seneca river which could be held to be an unreasonable use thereof, or which was in violation of any right of the plaintiff in any view of the case. (*Gould* v. *B. D. Co.*, 13 Grey, 443; *Clin-*

*ton* v. *Myers*, 46 N. Y. 511; *Bullard* v. *S. V. M. Co.*, 77 id. 525; *Head* v. *A. M. Co.*, 113 U. S. 19; *T. Co.* v. *Chicago*, 99 id. 641; *Atwater* v. *Trustees, etc.*, 124 N. Y. 609; *People* v. *Tibbetts*, 19 id. 523; *People* v. *Canal Appraisers*, 33 id. 486; *People* v. *N. Y. & S. I. F. Co.*, 68 id. 77.) If the plaintiff, by reason of the premises stated, has not or cannot suffer any actual damages by reason of the action of the defendants, and there is no finding of the court in this regard or to that effect, then of course, it is immaterial, so far as the plaintiff is concerned, whether the act of 1888 is unconstitutional or not. It has no special call to bring this suit. (*Thompson* v. *Comrs., etc.*, 2 Abb. Pr. 250; *People* v. *Canal Board*, 55 N. Y. 390; *Lord* v. *Thomas*, 64 id. 107; *Morgan* v. *Binghampton*, 102 id. 500; *Atwater* v. *Trustees, etc.*, 124 id. 609.) The conclusion of law that the plaintiff is entitled to all the surplus water which ran through the canal before the commencement of the enlargement of Bear race, not necessarily required for the purposes of navigation on the canal, is contrary to the settled law of this state. (*Burbank* v. *Fay*, 65 N. Y. 58.) An action of this kind is virtually an indirect action against the state, which cannot be maintained except by some statutory authority, submitting the state to the jurisdiction of the court. (*Lewis* v. *State*, 96 N. Y. 71; *People* v. *Dennison*, 84 id. 271; *Carr* v. *United States*, 98 U. S. 433; *Cunningham* v. *M. & B. R. Co.*, 109 id. 446.) In construing the act of 1888, the rule, "only when required by the most cogent reasons, nor indeed unless compelled by unanswerable grounds will a court declare a statute to be unconstitutional," is applicable. (*People* v. *Budd*, 117 N. Y. 13.)

*Charles A. Hawley* for appellants Sweet, Mongin & Cook. The judgment ought not to have been granted against the superintendent of public works. (*Mississippi* v. *Jackson*, 4 Wall. 475; *Gaines* v. *Thomas*, 7 id. 347; *Litchfield* v. *Register*, 9 id. 575; *Walker* v. *Smith*, 21 How. [U. S.] 579; *Thomas* v. *Com. of Canal Fund*, 5 Abb. Pr. 248; *Hartwell* v. *Armstrong*, 19 Barb. 166; *Lord* v. *Thomas*, 64 N. Y. 197.) The

improvement provided for by the act of 1888 is for public use. (Mills on Em. Domain, §§ 10, 11; Angell on Watercourses [7th ed.], 466; 16 Gray, 417; *Clark* v. *Blackmore*, 47 N. Y. 150; *Beekman* v. *S. S. R. T. Co.*, 3 Paige, 45; *Harris* v. *Thomas*, 9 Barb. 359; *Black* v. *M. R. R. Co.*, 18 Wend. 9; *B. & N. Y. R. R. Co.* v. *Barnard*, 9 N. Y. 595; *Ex parte Townsend*, 39 id. 171; *In re Fowler*, 53 id. 60.) The act of 1888 was not a local act. (*People* v. *N. P. R. Co.*, 86 N. Y. 7.) The exception to receiving in evidence the certified copies of the Assembly Journal and of the Senate Journal was well taken. (Code Civ. Pro. § 933.)

*Frederick L. Manning* for respondent. Certified copies of the Assembly Journal and Senate Journal, showing that the act did not receive a vote of two-thirds of the members of either house of the legislature, were properly received in evidence. (Code Civ. Pro. § 933; Laws of 1888, chap. 325.) The plaintiff is entitled to all the surplus water which ran through the canal before the commencement of the enlargement of Bear race, not necessarily required for the purposes of navigation on the canal. (*S. M. Co.* v. *People*, 104 N. Y. 562.) Chapter 325 of the Laws of 1888, which appropriated certain moneys for the improvement of Bear race, is a local act, and not having received a two-thirds vote of each house of the legislature, it is not constitutionally passed and is void. (Const. art. 1, § 9; *People* v. *Allen*, 42 N. Y. 378; *Prentice* v. *Weston*, 47 Hun, 21; *People ex rel.* v. *Comrs.*, 54 N. Y. 276.) The effect of said act is to take the property of plaintiff for a private purpose, and for that reason also said act is unconstitutional and void. (*Corning* v. *T. N. Factory*, 39 Barb. 311; *Holsman* v. *B. S. B. Co.*, 1 McC. 335; *Mager* v. *Chadwick*, 11 Ad. & El. 571; *Ricard* v. *Williams*, 7 Wheat. 59; *Bowman* v. *Wather*, 1 How. Pr. 189; *White* v. *Chapin*, 12 Allen, 511, 520; *Hammond* v. *Zehner*, 21 N. Y. 118; *Cochrane* v. *Van Surlay*, 20 Wend. 365; *Powers* v. *Berger*, 6 N. Y. 358; *Taylor* v. *Porter*, 4 Hill, 140.) The court had jurisdiction to restrain the superintendent of public works from proceeding

under said act.   (High on Inj. § 309 ; *In re N. F. R. R. Co.*, 108 N. Y. 375 ; *R. & S. Co.* v. *Davis*, 43 id. 137 ; *Tyler* v. *Beacher*, 44 Vt. 648 ; *Allen* v. *Jay*, 60 Me. 124 ; *Taylor* v. *Porter*, 4 Hill, 147 ; *Hay* v. *Cohoes Co.*, 3 Barb. 47 ; *Wilkinson* v. *Leland*, 2 Pet. 658 ; *Varick* v. *Smith*, 5 Paige, 159 ; *Beekman* v. *Saratoga, etc.*, 3 id. 46 ; *In re N. Y. C. R. R. Co.*, 66 N. Y. 407 ; *M. F. Co.* v. *Mayor, etc.*, 4 Cald. 424 ; *W. R. B. Co.* v. *Dick*, 6 How. Pr. 547 ; *Clark* v. *White*, 2 Swan, 549 ; *Gilmer* v. *Lime Point*, 18 Cal. 229.)

O'Brien, J.   The defendant James Shanahan, as superintendent of public works, in behalf of the state, entered into a contract with the defendants Fuller and Albaugh, for the performance of certain work in dredging and otherwise improving the channel of Seneca river and old Bear race, at Waterloo. The contractors had entered upon the work when this action was commenced, and both they and the superintendent of public works, were enjoined from proceeding therewith.   And by the final judgment in the action this injunction against them, and all persons acting under them, is made perpetual.   This appeal involves an examination of the reasons and grounds upon which the operations of the state, acting through one of its officers, and in pursuance of legislative direction, have been arrested at the suit of the plaintiff.   The judgment in this case decides that the improvement is not authorized by law and that the consummation of the work contemplated will injuriously affect certain property rights of the plaintiff.   It is necessary, at the outset, to get as clear an idea as possible in regard to the nature, origin and extent of these rights in order to get a more comprehensive view of the questions involved in the controversy.

The plaintiff is a domestic manufacturing corporation engaged in the manufacture of woolen goods on an extensive scale at Waterloo, deriving the power for the operation of its machinery from the waters of Seneca river.   It was incorporated in the year 1836, but the water-right and privileges which it owns and which it is claimed are to be affected by the

acts of the defendants, existed long prior to that date. In the year 1802 the state conveyed, by letters-patent, 640 acres of land to John McKinstry on the north shore of the Seneca river, where is now the site of the present village of Waterloo. In December, 1807, he conveyed the land to one Elisha Williams, who erected one or more mills on the site now occupied by the plaintiff's factories, adjoining or near the river. The motive power for these mills was furnished by a race or canal constructed by Williams from the river, on the north side and near the upper end of what is now Big island, which divides the flow of the water of the river, the main current being south of the island and on the opposite side from the race. The mills, so erected by Williams, were in operation in the year 1813 when the legislature, by special act, incorporated the Seneca Lock Navigation Company. (Laws 1813, chap. 144.) This company under the power conferred upon it by law, took the canal or race constructed by Williams as a part of its canal, reserving to him, however, the right to draw water from the canal for the use of the mills not necessary for navigation purposes. The navigation company, in the prosecution of its business, used the river as a highway except around the rapid places, where it constructed a canal and locks for the passage of its boats, and the mill-race, dug by Williams, was utilized for this purpose. While the company carried on its operations the situation was this: It had the right to the use of the race which was made forty feet wide and between three and four feet deep, supplied with water from the river for the passage of its boats, and Williams and his grantees were entitled to all the surplus water from the canal or race for the use of their mills. The respective rights of the corporation and the grantees of Williams to the use of the water flowing through the race, thus converted into a canal for public use are regulated and defined by the statute, under which authority was given to acquire the race, and by a recent decision of this court. (*Silsby Mfg. Co.* v. *State*, 104 N. Y. 562.)

With the rights of the parties thus vested and defined, the legislature in the year 1825 authorized the construction of the

Cayuga and Seneca canal by the state, and for that purpose authorized the purchase of all the rights and privileges of the navigation company. (Laws 1825, chap. 271.) The state, under this statute and the proceedings thereunder, acquired such rights to the use of the water as the corporation to which it succeeded then had and no more, and Williams and his grantees still retained the right to the use of the surplus water then flowing through the canal from the river and no more. (*Silsby Mfg. Co.* v. *State, supra.*)

Subsequently the state found it necessary to enlarge the capacity of the canal which occupied the old mill-race, by making it deeper and wider. The last improvement in this respect was authorized and executed under chapter 479 of the Laws of 1857. This enlargement resulted in a canal seventy feet wide and a minimum depth of seven feet with a maximum depth of nine feet, in place of the original race, and consequently a greatly increased quantity of water was diverted from the channel of the river into the canal. The plaintiff having succeeded, through mesne conveyances, to all the rights of Williams, has enjoyed the benefit of the increased body of water thus supplied by the state in the additional power which it furnished for the operation of machinery, and the advantage thus gained, it now claims as a property right, which it seeks to retain and protect in this action. It has not been found by the court below, nor is it alleged in the complaint, that any right which the plaintiff's grantors had or enjoyed during the occupation of the race as a canal by the navigation company is threatened or will be injuriously affected by any act of the defendants. But it is alleged and found that since 1857, the plaintiff has used and enjoyed the water-power for its factories, as enlarged and increased by the improvement of the canal, made by the state in that and previous years, with the acquiescence of the authorities of the state having charge of the care and management of the canals, and that such use and enjoyment has ripened by the lapse of time into a property right which is threatened and will be seriously impaired if the contract made by the defendants with the state, is carried out.

Thus far our attention has been directed to the origin, nature and extent of the property rights on the north side of the river, as developed since the grant from the state in the beginning of the present century. In order to appreciate and understand the motive which probably inspired or stimulated the legislation which must be hereafter considered, and which is the real point of contention between the parties, it is necessary to notice other and what, perhaps, might be called rival interests and rights which, during the same period, were developed on the south or opposite side of the river, and which must have been materially affected by the operations of the state and of the corporation, the rights of which the state acquired on the other shore of the stream.

About the year 1798, one Samuel Bear settled on lands on the south shore, now the site of South Waterloo, or that part of the village which is south of the river. The Seneca river flows from the outlet of Seneca lake, at the village of Geneva, easterly through the villages of Waterloo and Seneca Falls, and finally empties into the Oswego river. It divides the village of Waterloo, one ward being south of the river and the other north. In the year 1804, the state conveyed one hundred acres to Bear, lying along and south of the river, with the water-power and privileges connected therewith. He also dug a race and erected a mill on his land. The use by Bear of the water of the river for manufacturing purposes, on the south side through this race, probably antedated a similar use by Williams on the other side, though this fact is not found and in our view is not very material. It is the channel known in the case as Bear race, and entered the river near the easterly end of Big island and a considerable distance easterly or below the point where Williams tapped the river with his race on the opposite side. The defendants Sweet, Mongin & Cook are the owners of this race, water-power and mill, having derived title thereto through mesne conveyances from Bear. The channel of the river was originally along and near the south shore, so that when Bear built his mill, the facilities for obtaining a proper supply of water were appar-

ently as good on his side of the river as on the other. But, subsequently, as we have seen, the navigation company and later the state itself diverted the water at a point above into the canal on the north shore, and the plaintiff's mills, using the surplus, must have had a better supply than the mills on the other side. In fact the plaintiff has succeeded in this case in the courts below, on the ground that the power of the legislature to appropriate money has been used for the purpose of securing to certain mills on the south side of the river a greater supply of water, which must necessarily diminish the surplus from the canal, and thus take property from the plaintiff for the use of persons on the opposite side of the river.

This view of the situation and this conflict of private interests will enable us to consider the legislation which the plaintiff has thus far successfully assailed.

By chapter 113 of the Laws of 1887 the superintendent of public works was authorized to expend fifteen thousand dollars, or so much thereof as might be necessary, in necessary improvements on locks number one and two on the Cayuga and Seneca canal, and to remove obstructions and debris between Seneca lake outlet and the upper dam at Waterloo. The money thus appropriated, for some reason not now important to ascertain, was not expended, but remained in the state treasury, and at the next session of the legislature chapter 325 of the Laws of 1888 disposed of it and authorized its expenditure in language somewhat different from that used in the statute passed the year before, as follows:

"An act to provide for the dredging and excavating the channel of Seneca river and the old Bear race in the village of Waterloo to facilitate the passage of canal boats.

"Approved by the Governor May 18, 1888. Passed, three-fifths being present.

"The People of the State of New York, represented in Senate and Assembly, do enact as follows:

"Section 1. The superintendent of public works is hereby authorized in his discretion to expend the fifteen thousand dollars, or so much thereof as may be necessary, which was

appropriated by chapter one hundred and thirteen of the Laws of eighteen hundred and eighty-seven and directed therein to be applied to improvements on the Cayuga and Seneca canal, toward dredging and excavating the channel of Seneca river, from its intersection with said canal in the village of Waterloo and the old Bear race, and thence toward dredging and excavating said race to Washington street in said village, so as to admit the passage of canal boats therein from said canal.

"§ 2. This act shall take effect immediately."

Pursuant to the authority thus given, the defendant Shanahan, as superintendent of public works, advertised, as required by law, for proposals to perform the work contemplated by the legislature in the passage of the act. This resulted in a contract with the state for the performance of the work by the defendants Fuller and Albaugh, in conformity with a map and plans prepared by the state engineer. After entering upon the performance of the contract they were enjoined by order granted in this action, and Sweet, Mongin & Cook, the parties who own Bear race, were also made parties to the action upon the ground that they were to be the real beneficiaries of the improvement, although there is no allegation that they had done or threatened any act in furtherance of the work.

On the trial of the action at Special Term the court found the following facts in addition to those already stated: That the Seneca river is a navigable public highway, and that its channel is south of Big island; that Bear race was private property, and that neither it nor the channel of the river to its intersection with the canal where the dredging was to be done and the improvement made were any part of the canal system; that the race was about twenty feet wide and three and a half feet deep, and that, by the improvement, it was to be made wider and deeper; that the plaintiff is entitled to all the surplus water that runs through the canal; that chapter 325 of the Laws of 1888 did not receive the assent of two-thirds of the members of either house of the legislature, and is void; that it appropriated public money for a local or private purpose, and that its effect was to take the plaintiff's

property for private use, and was, therefore, in conflict with the Constitution, and, being thus invalid, it furnished no authority or protection to the superintendent or the contractors in deepening the channel of the river and the race, and in this way diverting the waters of the river from the canal. Judgment was directed perpetually restraining them from further prosecution of the work, and it has been affirmed by the General Term.

The case, therefore, involves, among other questions, the validity of an act of the legislature, always important. The court has said upon a recent occasion that "only when required by the most cogent reasons, nor, indeed, unless compelled by unanswerable grounds will an act of the legislature be declared void." (*People* v. *Budd*, 117 N. Y. 13.)

Before proceeding to examine the grounds upon which a statute has been held void, in this case it may be well to observe that there can be no dispute as to the power of the legislature to take private property for other than a public use without the consent of the owner. That, of course, cannot be done, either with or without compensation. Nor can it be denied that, generally, whether the use to which private property may be devoted by legislative power is in fact public or private, is a judicial question, and the courts are not concluded by any declaration of the law-making power as to the nature of the use. (*Matter of Niagara Falls & Whirlpool R. Co.*, 108 N. Y. 375; *Matter Deansville Cemetery Association*, 66 id. 569.)

So, too, it has been held that a legislative act, ostensibly for the protection of the public health, but which deprives the citizen of liberty or property, may be subjected to judicial scrutiny for the purpose of ascertaining whether its provisions really relate to and are in fact convenient and appropriate to promote the public health. The determination of the legislature on this point is not final or conclusive. (*Matter of Jacobs*, 98 N. Y. 98.)

It may also be regarded as settled that when the legislature appropriates public money for some improvement, the courts

may inquire whether the improvement is for a purpose which
is public, or one merely private or local, and whether the bill,
if the purpose was private or local, received the assent of two-
thirds of the members of each house of the legislature, as
required by the Constitution. (*People* v. *Allen*, 42 N. Y. 378 ;
*People ex rel.* v. *Commissioners of Marlborough*, 54 id. 276.)
But the scrutiny which the courts have exercised in regard to
legislation of this character has been confined to matters
appearing on the face of the bill itself, and to things that are
the subject of judicial notice. In this case the act has been
held void as an appropriation of public money for a local or
private purpose, not receiving the assent of two-thirds of the
members of each house. The private or local character of the
expenditure does not appear on the face of the bill, but the trial
court, against the defendant's objection and exception, insti-
tuted an inquiry in regard to the purpose of the appropriation
upon the testimony of witnesses, and having found as matter
of fact from this testimony that the improvement could not
benefit the canal, but would benefit the property of individuals,
the conclusion was reached in this way that the purpose of the
appropriation was not public, but private or local. Reading
the title and the provisions contained in the body of the act, it
provides for an expenditure of fifteen thousand dollars for the
purpose of dredging and excavating the channel of a navigable
river and a private race intersecting the canal, so as to facilitate
the passage of canal boats therein, from the canal. The pur-
pose thus expressed is not private or local, but public, inas-
much as the general improvement of the public highways of
the state, whether canals or rivers that are navigable, is for the
benefit of the state at large, though some locality or some
individuals may be benefited more than others. The expendi-
ture may in fact be improvident and the work may prove to
be useless to the public, but the legislature, as the depository
of the sovereign powers of the people, must necessarily be the
judge of the propriety and utility of making it. If it were
otherwise, every appropriation of money by the legislature
could be assailed in the courts, at the suit of private individuals,

on the ground that they are useless and intended for a purpose other than is plainly expressed, in order to evade some provision of the organic law. The judicial department cannot institute an inquiry concerning the motives and purposes of the legislature, in order to attribute to it a design contrary to that clearly expressed or fairly implied in the bill, without disturbing or impairing in some measure the powers and functions assigned by the Constitution to each department of the government. The courts cannot determine, upon the testimony of witnesses, that the purpose of the legislature was to appropriate public money for the benefit of an individual, when it has expressed its purpose in the bill itself to be the enlargement or improvement of the canal. They must assume that the legislature acted in good faith and meant just what it said, though it may be possible to show, outside of the language and terms of the bill, that in fact all, or the larger part, of the benefits following the expenditure may or will be reaped by a few individuals. The question always is, with respect to such bills, how is the purpose of the legislature to be ascertained? Must that be determined from the bill itself and from such considerations as the court can judicially notice, or is it competent to take proof and determine it as a matter of fact, as was done in this case? Reason and authority, as well as the fitness of things, demand that when an act of the legislature appropriating money is assailed upon the ground that the purpose of such appropriation is local or private and not public, the question shall be determined by the language and general scope of the act. This principle was stated with great force and clearness by Judge DENIO in *People* v. *Draper* (15 N. Y. 545): "If a particular act of legislation does not conflict with any of the limitations or restraints which have been referred to, it is not in the power of the courts to arrest its execution, however unwise its provisions may be, or whatever the motives may have been which led to its enactment. There is room for much bad legislation and misgovernment within the pale of the Constitution, but whenever this happens, the remedy which the Constitution provides, by the opportunity for frequent

renewals of the legislative bodies, is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words, or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real ones. If the act can be upheld upon any views of necessity or public expediency which the legislature may have entertained, the law cannot be challenged in the courts." The power of the courts to overthrow legislative acts by independent inquiries as to facts, outside of the provisions of the statute itself, has been considered and denied in more recent cases. (*People ex rel.* v. *Albertson*, 55 N. Y. 50, 54; *Matter of N. Y. E. R. R. Co.*, 70 id. 327; *People ex rel. Kemmler* v. *Durston*, 119 id. 569; *Amy* v. *Watertown*, 130 U. S. 319.)

But, even upon the theory adopted by the courts below and upon the facts developed at the trial and found in the record, it is by no means clear that the act is invalid under section 9 of article 1 of the Constitution, which requires a two-thirds vote for the appropriation of money for a local or private purpose. The state had diverted the waters of the river into the canal and to that extent deprived the riparian owners below on the south side of its use. Assuming that the purpose of the act was, as claimed, to restore a portion of the water thus diverted to its original channel and to the use of the owners who had been deprived of it by the act and authority of the state, who can say that an expenditure for that purpose is private or local within the meaning of the Constitution? If the state, in carrying out a policy of justice through its legislature, appropriates money to pay a debt or to repair an injury inflicted upon an individual or a locality, obligatory upon it in honor and justice, that is but a part of its legitimate functions and duties as a sovereign and the purpose in such case would seem to be public. (*Morris* v. *People*, 3 Denio, 399.)

So that, whether the statute is tested by reference to its language alone or by a consideration of the facts established, it

was legally enacted.  Moreover it should also be observed that the complaint contains no allegation that the statute was not constitutionally enacted, or that it did not receive the requisite vote or that it is private or local, and the evidence upon which these facts were found and the finding itself were excepted to. It has been held that when the objection to the validity of a law arises out of the failure of the legislature to comply with the procedure pointed out by the provisions of the Constitution, which is not apparent upon the face of the act itself, the facts must be distinctly pleaded.  (*People ex rel.* v. *Supervisors of Chenango*, 8 N. Y. 317; *Thomas* v. *Dakon*, 22 Wend. 9; *Hunt* v. *Van Alstyne*, 25 id. 608.)

But as this point was not specifically raised at the trial and is not discussed upon the briefs of counsel, we prefer to put our decision on other grounds.  The courts below have also held that the act is invalid because its effect is to take the plaintiff's property for private purposes.  This proposition is based solely upon the fact that the improvement, by deepening the channel of the river and enlarging the race, will divert water from the canal and restore it to the channel of the river, the use of which the plaintiff has enjoyed without question for more than twenty years.  The use by the plaintiff of the surplus water beyond what it was entitled to during the occupation of the canal by the navigation company, however long continued, and whether adverse or by permission, could not impair the rights of the state.  (*Burbank* v. *Fay*, 65 N. Y. 57.)

The state was at liberty to withdraw the surplus, so far as it came from the enlargement of the canals of 1857 and prior thereto, so long as the plaintiff could use the quantity of water secured to its grantors by the law under which the navigation company acquired the race.  It is not claimed that this right was threatened or could be impaired by the improvement.  The state could restore water which it diverted from the natural channel without furnishing the plaintiff with any legal ground of complaint, even though it was for the purpose of delivering it to the defendants or any other riparian owner on the south side.  So long as the legal rights of the plaintiff, as

between it and the state are respected, it cannot complain if
the state is doing something with its own property that may
possibly benefit others.   If the state has the right to diminish
the supply of water in the canal at all, and that right is not
denied, then the motives that may underlie the act are not
material.   The reasons that move the public authorities do not
concern the plaintiff.   So we conclude that the plaintiff has
no property right in the use of the surplus water in the canal,
as increased by the enlargement made by the state from 1840
to 1857, that can be impaired by the execution of the work
contemplated by the statute.   But if the plaintiff could estab-
lish any right to the use of the increased supply of water fur-
nished by the state in the process of enlarging the canal from
time to time, the most that the plaintiff could then claim would
be that the improvement would result in a consequential injury
which might form the basis for a claim for damages or com-
pensation before the tribunal which the state has authorized to
hear and determine such claims.   It would furnish no ground
for arresting the work of improving or enlarging the canal in
such manner as the legislature might determine to be for the
public good.   (*Atwater* v. *Trustees, etc.,* 124 N. Y. 602;
*Silsby Mfg. Co.* v. *State, supra; Rexford* v. *Knight,* 11 N.
Y. 313 ; Laws 1883, chap. 205, § 13.)

The execution of the work, authorized by the statute, by the
the superintendent of public works, or the contractor acting
under his authority, does not involve the taking of any of the
plaintiff's property for any purpose, public or private.

But Bear race, from its intersection with the river to Wash-
ington street, which the act also provides for dredging and
excavating, is the private property of the defendants Sweet,
Mongin & Cook.   If that has been or is to be taken, within
the meaning of the Constitution, that is a question which the
owners alone can raise.   It does not in any legal sense concern
the plaintiff, if the defendants see fit to renounce a constitu-
tional provision, intended for their own benefit.   (*Town of
Pierrepont* v. *Loveless,* 72 N. Y. 211 ; *Baker* v. *Braman,* 6
Hill, 47 ; *Matter of Mayor, etc.,* 99 N. Y. 569, 584.)

The expenditure of public money for the purpose, in part at least, of enlarging a private mill-race, furnishes the basis for the argument, in behalf of the plaintiff, to show that the appropriation is for a private or local purpose.   But we have no right to assume, as this argument does, that the state will never acquire the title to the race or the right to its use for the purposes of navigation.   The title, or the right to its use, can be acquired at any time and need not be obtained in advance. Property required by the state for canal purposes always has been and may still be taken in a summary way, without the aid of any judicial proceeding.   The constitutional provision requiring the compensation to be made to the owner, to be ascertained by a jury, or by commissioners appointed by the court does not apply to such a case.   (Const. art. 1, § 7.)   The state may take possession, go on with its work and await the claim of the owner for compensation.   (*Marks* v. *State*, 97 N. Y. 572; *Heacock* v. *State*, 105 id. 246; *Stewart* v. *State*, Id. 254; *Benedict* v. *State*, 120 id. 228.)

In this view we have no right to say that when the authorities of the state were restrained, they were not proceeding, in good faith, to make an improvement to the canal system. Moreover it must be noted here that by chapters 461 and 493 of the Laws of 1889 the legislature reappropriated the money for this very improvement, increasing the amount, and providing for a release to the state of Bear race by the owners for canal purposes.   We have already considered the argument of plaintiff's counsel, which, apparently, was successful in the courts below, that the real purpose of the appropriation was to furnish additional power to defendants' mill which is located at the easterly end of Bear race; and while we consider that this point is sufficiently answered by the remark of ALLEN, J. in *People* v. *Albertson* (*supra*), that "no motive, purpose or intent can be imputed to the legislature, in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself," yet there is an additional fact which deserves some notice.   The act authorizes no work to be done in Bear race farther east than Wash-

ington street and this would not reach the defendants' mill as it is located on the other or easterly side of that street. The additional flow of water, which would result from deepening and widening the race, cannot be utilized by the defendants until the work is carried still further east and the machinery in the mill is changed in order to permit the use of more power. It is not found or alleged that such a change is contemplated or threatened. In this view it is difficult, upon any theory of the case, to say that the state has any other purpose in view than that expressed on the face of the act, namely : to enlarge the channel of the river and the race, in order to permit navigation, by boats, from the canal to a public street, on the south side of the river.

The judgment of the General and Special Terms should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.