ground for ordering an examination of this character. Rogers v. Adler, 137 App. Div. 197, 121 N. Y. Supp. 941. He is not the plaintiff in this action, and is not a party to it. In order to be permitted to examine before trial a person not a party to the action, it must be made to appear that the person sought to be examined is "about to depart from the state, or that he is so sick and infirm as to afford reasonable ground to believe that he will not be able to attend the trial, or that any other special circumstances exist which render it proper that he should be examined. * * *" Code Civ. Proc. § 872, subd. 5. Here no attempt was made to show that Bernstein was sick or infirm, or about to leave the state, and the only special circumstances which could possibly justify an order for his examination is the fact that he is the plaintiff's assignor. While this may, perhaps, be properly considered in determining whether such an order shall be made, it is not enough in and of itself to warrant the order. Something more must be shown.

Nothing else was shown in the present case, and for that reason the order appealed from must be reversed, with $10 costs and disbursements, and the motion to vacate granted, with $10 costs. All concur.

---

(69 Misc. Rep. 251.)

LEHIGH VALLEY R. CO. v. CANAL BOARD et al.

(Supreme Court, Trial Term, Cayuga County. October 7, 1910.)

1. NAVIGABLE WATERS (§ 20*)—RAILROAD BRIDGES—LAWFULNESS OF STRUCTURE.

The general railroad law (Laws 1850, c. 140) permitted railroad companies to bridge streams, but so as not unnecessarily to impair navigation, but provided that the act should not permit a bridge at a point where a stream was navigated by steam or sail boats. *Held*, that a bridge was not unlawfully constructed over a navigable river, where commerce thereon had practically ceased, and there were located on both sides of it, and only a short distance away, highway bridges with no greater clearance.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–99; Dec. Dig. § 20.*]

2. NAVIGABLE WATERS (§§ 1, 20*)—NAVIGABILITY—RESTORATION.

Cessation of commerce on a river and erection of bridges over it did not defeat the river's character as a navigable stream; it being at all times competent for the Legislature to improve and increase its navigability, and when necessary for that purpose to require the bridges to be raised or removed.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 5, 91; Dec. Dig. §§ 1, 20.*]

3. NAVIGABLE WATERS (§ 37*)—OWNERSHIP OF BED.

The fee of the beds of all navigable streams is vested in the state, and a railroad company has no property rights therein on account of bridge piers resting thereon.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 201–227; Dec. Dig. § 37.*]

4. NAVIGABLE WATERS (§ 36*)—TRESPASS ON LANDS UNDER WATER—OFFICERS—POWERS.

The canal board, existing under the Barge Canal act (Laws 1903, c. 147), is without power to proceed against a railroad company for any tres-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pass upon state lands, constituted by the presence of bridge piers resting on the bed of a navigable river.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 194; Dec. Dig. § 36.*]

5. NAVIGABLE WATERS (§ 20*)—RAILWAY BRIDGES—LICENSE TO MAINTAIN PIERS.

The general railroad law (Laws 1850, c. 140), authorizing the construction of bridges over streams, is a sufficient license to a company to set the piers in the bed of a river, when reasonably necessary to support the bridge, and when such piers do not unnecessarily impair the usefulness of the river.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 73–76; Dec. Dig. § 20.*]

6. CANALS (§ 17*)—BRIDGES—RECONSTRUCTION—LIABILITY FOR COST.

While the Legislature could compel railroads to reconstruct their bridges over a canal in accordance with requirements of the Barge Canal act (Laws 1903, c. 147), such power was not exercised, as is evidenced by the Legislature's approval of an estimate of the total cost of the work, which included the cost of altering such bridges, and by the provisions of the act authorizing the state engineer to take possession of structures deemed necessary for the use of the canal, which provision must be construed as directing the replacement of the bridges at the expense of the state.

[Ed. Note.—For other cases, see Canals, Cent. Dig. § 25; Dec. Dig. § 17.*]

7. CONSTITUTIONAL LAW (§§ 70, 77*)—JUDICIAL POWERS—EXECUTIVE POWERS —ENCROACHMENT ON LEGISLATURE.

The question of public policy, whether railroad companies or the state should bear the expense of rebuilding bridges over a stream improved by the state as a canal, is one to be determined by the Legislature, and, if the legislative intent is clear, it must control the courts and state officers.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 131, 141; Dec. Dig. §§ 70, 77.*]

8. STATES (§ 119*)—APPROPRIATIONS—AIDING PRIVATE UNDERTAKINGS.

The Barge Canal act (Laws 1903, c. 147), appropriating money to replace railroad bridges appropriated for the purposes of the canal, does not violate Const. art. 8, § 9, prohibiting the giving of the state's moneys in aid of any corporate or private undertaking.

[Ed. Note.—For other cases, see States, Cent. Dig. § 118; Dec. Dig. § 119.*]

9. STATUTES (§ 21*) — ENACTMENT — SUFFICIENCY OF RATE — "APPROPRIATING PUBLIC MONEYS FOR PRIVATE PURPOSES."

The Barge Canal act (Laws 1903, c. 147), providing for the improvement of a canal and requiring the replacement of railway bridges at state expense, is not a law appropriating public moneys for private purposes, within Const. art. 3, § 20, requiring the assent of two-thirds of the members elected to each branch of the Legislature to every bill making such appropriations.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 18–27; Dec. Dig. § 21.*]

Action by the Lehigh Valley Railroad Company against the Canal Board and others, to enjoin defendants from destroying and interfering with plaintiff's railroad bridge across the Seneca river, without making compensation to plaintiff therefor, and for other relief. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

O'Brien, Boardman, Platt & Littleton, for plaintiff.

Edward R. O'Malley, Atty. Gen. (A. E. Tuck and Ernest G. Gould, of counsel), for defendants state officers.

Battle & Marshall (Roger B. Wood, of counsel), for defendant Stewart-Kerbaugh-Shanley Co.

FOOTE, J.  Plaintiff's railroad crosses the Seneca river north of Weedsport on an iron bridge.  The use of this river as a part of the new Barge Canal now building requires the removal of this bridge, and (if the crossing by plaintiff's railroad is to be continued) the erection of another of longer span and elevated many feet higher above the river for greater clearance.  The defendant state officers have contracted with the defendant Stewart-Kerbaugh-Shanley Company for the necessary work to canalize the river on the section which includes this bridge, making no provision for replacing the bridge, and have called on plaintiff to remove the bridge.  They are proceeding on the theory that the statute (chapter 147, Laws 1903) under which the canal is being constructed does not require or contemplate that the state shall bear the expense of a new bridge or pay any damages for the destruction of the present bridge.  Plaintiff brings this action to enjoin defendants from destroying plaintiff's bridge, without making compensation or provision therefor, and for other relief.

The question presented is: Does this statute provide that the expense of replacing this bridge with a new one shall be borne by the state?  The work to be done is outlined in section 3.  It is there provided as follows:

"Within three months after issuing the said bonds or some part thereof the superintendent of public works and the state engineer are hereby directed to proceed to improve the Erie Canal, the Oswego Canal and the Champlain Canal in the manner hereinbelow provided."

Then follows a detailed description of the route of these several canals, which as to the Erie Canal near the point in question is as follows:

"Thence through Oneida Lake to the Oneida river; thence down the Oneida river cutting out the bends thereof where desirable, to Three River Point; thence up the Seneca river to the outlet of Onondaga Lake; thence still up the Seneca river to and through the state ditch at Jack's reefs; thence westerly generally following said river to the mouth of Crusoe creek; thence substantially paralleling the New York Central Railroad and to the north of it to a junction with the present Erie Canal about one and eight-tenths miles east of Clyde."

After many other provisions as to the route and locks and their dimensions, occurs the clause relating to bridges in the following language:

"New bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals.  All fixed bridges and lift bridges when raised shall give a clear passage way of not less than fifteen and one-half feet between the bridge and the water at its highest ordinary navigable stage."

Plaintiff contends that this clause properly interpreted means that the state undertakes, as a part of the work of building the new canal,

to replace with new bridges all existing bridges where bridges are rendered necessary by the new location of the canals.

The learned Attorney General, representing the defendants, concedes that this is true as to highway bridges, but claims that it was not the intent of the Legislature that the state should pay for the expense of new railroad bridges to take the place of existing railroad bridges over navigable streams. The argument of the learned Attorney General is based principally upon the right of the state to compel the removal of this bridge without compensation or liability for damages, by virtue of its sovereign power to improve navigation. He contends that the fee of the land in the bed of this river is vested in the state for the use of the people, and also that to construe this act as authorizing and directing the use of state moneys for the erection of new railroad bridges would make the act unconstitutional in this respect, in that it would be the giving of the money of the state to a corporation in violation of section 9 of article 8 of the state Constitution, as follows:

"Neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation or private undertaking."

The bridge in question was constructed by the Southern Central Railroad Company in 1871 and was then a wooden bridge. It was rebuilt as an iron bridge in its present form in 1888. Plaintiff is the lessee of the Lehigh & New York Railroad Company for a term of 999 years, and said latter company in the year 1895 became the owner by purchase under mortgage foreclosure of the property and lines of railroad of the Southern Central Railroad Company, including the bridge in question. This line of railroad has been continuously operated since about the time this bridge was constructed in 1871 until the present time, and it constitutes a part of plaintiff's system of railroads located in the states of New York and Pennsylvania, and this line, known as the "Auburn Division," extends from North Fair Haven, in the state of New York, on the shores of Lake Ontario, southerly to Sayre, in the state of Pennsylvania, where it joins other lines of plaintiff's railroad. The bridge was constructed by the Southern Central Railroad Company by virtue of the authority contained in chapter 140, Laws 1850, being the general railroad law, which authorized railroad companies incorporated under that act—

"to construct their road across, along or upon any stream of water, watercourse, street, highway, plank road, turnpike or canal, which the route of its road shall intersect or touch; but the company shall restore the stream or watercourse, street, highway, plank road and turnpike thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness."

The act further provides that:

"Nothing in this act contained shall be construed to authorize the erection of any bridge, or any other obstructions across, in or over any stream or lake navigated by steam or sail boats, at the place where any bridge or other obstructions may be proposed to be placed."

Defendants contend that the Seneca river was, in fact, navigated by steam or sail boats at the place where this bridge was constructed,

within the intent and meaning of this provision of the statute, and so that the same became an unlawful structure because prohibited by statute, and considerable testimony was given upon this subject. There is no doubt upon the evidence that the Seneca river is a navigable stream. In the early history of the state, before the construction of the Erie Canal, it was a part of the principal highway of commerce. After the construction of the Erie Canal, this commerce dwindled and practically ceased to exist long prior to 1871. At that time, when this bridge was first erected, there was located on both sides of it, and only a short distance away, highway bridges over the Seneca river with no greater clearance than that under plaintiff's bridge. These highway bridges had existed for many years and effectually prevented navigation at this point by steam or sail boats within the intent and meaning of this statute. The bridge was, therefore, not an unlawful structure at the time it was built. The Seneca river did not, however, lose its character as a navigable stream, and it has been at all times competent for the Legislature to improve and increase its navigability, and, when necessary for that purpose, to require this bridge to be raised or removed. Moreover, I am satisfied that the fee of the bed of the river, as of all navigable streams, is vested in the state, and that plaintiff has no property rights therein.

Two of the piers of masonry which support this bridge rest upon the bed of the river, and, in view of the length of the bridge (342 feet, consisting of three spans of 114 feet each), this form of construction seems to be proper, if not necessary. The learned Attorney General contends that, as these piers stand upon land the fee of which is in the state, they constitute a trespass upon state lands, which entitles the state to proceed through the officers who are defendants here requiring them to be removed; but no statutory authority has been cited vesting in these particular state officers the power to act for the state in such a case, and I am aware of none. These state officers are, in fact, proceeding under the Barge Canal act, and not otherwise, and the present case must be determined by the authority which they derive from that act.

It is not contended, however, by the learned Attorney General, that if the Seneca river was not in fact navigated by steam or sail boats at the point where this bridge was constructed in 1871 when it was built, that the act of 1850, permitting the railroad company "to construct their road across, along or upon any stream of water," did not authorize the setting of piers in the bed of this river, although upon state land, so long as the piers do not unnecessarily impair the usefulness of the river. I am referred to no authority upon this subject and have not been favored with the views of counsel. On principle it would seem that the statute authorizing the railroad company to construct this bridge is a sufficient license to the company to set the piers in the bed of the river, where that is reasonably necessary to support the bridge and such piers do not unnecessarily impair the usefulness of the river. If I am right in this, it would seem to follow that defendants must find authority in the Barge Canal act for compelling plaintiff to remove its bridge from the Seneca river and to construct

another at its own expense some 10 feet higher above the water, if it is to continue to operate its railroad at this point.

We come, then, to the question as to what provision has been made by the Barge Canal act in reference to railroad bridges over that part of the canals which are now to be placed in a new location. Plaintiff contends that, by the proper and necessary construction of the act, the Legislature intended and has directed that this bridge and all other railroad bridges similarly situated over rivers and streams which are now to be converted into canals shall be replaced, wherever necessary, with new bridges at the expense of the state, and in aid of that construction plaintiff relies upon certain acts and proceedings of the Legislature and the state officers preliminary to the passage of this act, now to be adverted to:

In March, 1899, the Governor appointed a committee of which Gen. Francis V. Greene was chairman, to investigate the canal problem in this state. This committee reported, under date of January 15, 1900, in favor of the improvement of the Erie Canal along the Oneida-Seneca route, making use of the Seneca river as a part of the proposed new location in this section of the state. This report contained detailed estimates of the cost which would be incurred, and among other items was the cost of raising the bridge in question and other railroad bridges across the Seneca river. The total estimate of the cost of the improvement of the canals by this plan was $61,500,000. This report was referred to the Legislature. On April 12, 1900, the Legislature passed chapter 411 of the Laws of that year, which authorized and directed the state engineer and surveyor to cause the necessary surveys to be made to ascertain the cost of constructing and improving the Erie Canal, the Champlain Canal, and the Oswego Canal, as in the act more particularly described. It further provided, as follows:

"The surveys, plans and estimates provided for in this act shall embrace all extra right of way required and all construction and improvement, and all work proposed to be done in the construction and improvement of said canals as in this act described, and all work connected therewith; * * * the dams, locks and other structures necessary to be used on the Seneca river, the Oswego river, the Oneida river * * * and other necessary rivers or streams pertaining to this work; * * * and generally all work of whatsoever description that may be necessary to carry out the construction and improvement of the said canals, respectively, as hereinafter described, substantially in accordance with the recommendations of the committee on canals of New York state."

The committee on canals of New York state, referred to, is the committee previously mentioned, appointed by the Governor, of which Gen. Greene was chairman. This act also appropriated $200,000 for the work of the survey, and directed the state engineer to report the result by January 15, 1901. Hon. Edward A. Bond, then state engineer, made the examination and survey required by this act and reported to the Legislature of 1901. This report recommended a 1,000-ton barge canal, 12 feet in depth, with a clearance of 15½ feet for bridges, and the recommendations of the report as to the form of the canal were adopted almost literally by the Barge Canal act of 1903. It estimated the total cost of the proposed improvement of the Erie

Canal by the Oneida-Seneca route at $71,732,528, and of the improvements proposed in the Oswego and Champlain Canals an additional sum sufficient to make the total cost of the three canals $80,219,172. This report provided specifically for the erection of 27 railroad bridges which were rendered necessary by the new location of the canals, and the estimated cost of these new bridges was $3,000,000. A specific estimate was made of the cost of each of these 27 bridges, and the cost of replacing plaintiff's bridge across the Seneca river, which is the subject of this action, was estimated at $84,690. The report states that:

"A full complement of first-class bridges is provided wherever required, and of sizes and description to suit their particular location."

And also:

"In railroad crossings a rule was adopted by which each estimate included the necessary alterations of all track and structures within the limit determined by a maximum grade of one-half of 1 per cent. for main lines in general, and of 1 per cent. for branch lines and special cases. These railroad changes form no small part of the outlay and a list showing the cost of same is shown in Appendix I."

Again, on page 239 of this report, it is said:

"Where the proposed new location interferes with existing railroads, estimates have been prepared in each case to cover the necessary cost of raising the tracks, or, if necessary, to provide for the necessary cost of relocation. In all cases the unit prices are sufficient to cover the cost without the interruption of traffic on the railroad. Where the present line of the Erie Canal is followed (and this applies equally well to the other canals), the cost of raising railroad bridges and approaches, or the construction of new bridges in order to obtain the necessary width of waterway and sufficient clearance above the water surface, *has not been* included in the estimate. This is in accordance with the policy of the state of New York as outlined in the report of the committee on canals, 1899."

"In the table of bridges (Part I) the costs of the bridges and approaches are given for all bridges which become part of the estimated cost of the canal. Part M gives a more detailed statement of these changes and includes all alterations of track not due directly to raising the bridges."

A few days after the receipt of this report by the Legislature, and on January 15, 1903, a bill for the construction of the Barge Canal, which finally became the Barge Canal act, was introduced in the Assembly, and on January 28th in the Senate. The original Assembly bill proposed an appropriation of $81,000,000, while the original Senate bill proposed $82,000,000. The provision in reference to bridges in each of these bills originally read:

"New bridges shall be built over the canals to take the place of existing *highway* bridges whenever required or rendered necessary by the new location of the canals."

These bills were referred to the proper committee in each House, and while they were pending they were reported from each of these committees for amendment, and amended in each House by striking out the word "highway," leaving the clause in reference to bridges after such amendment in the form finally adopted in the Barge Canal act.

On the 10th day of February, 1903, while these bills were pending before the Legislature, the Assembly adopted a resolution reciting that there was before that body a bill providing for an appropriation of $82,000,000 for the improvement of the Erie, the Oswego, and the Champlain Canals upon the plans described, and that the amount of money asked for purports to be based upon estimates made by the present state engineer and surveyor after careful survey made in the year 1900, and that since such survey two years have elapsed, which may have impaired the accuracy of these estimates, and that it is desirable that all the particulars of these estimates should be thoroughly understood by the Assembly before voting to submit another canal appropriation to the people; and it was resolved that the state engineer be requested to communicate to the Assembly on or before March 2, 1903, answers to certain questions, among them the following:

"1. Would your estimate of cost made in the year 1900 cover the cost of said work under present prices of material and labor? If not, what is the present estimate of the work proposed by said Assembly Bill No. 330?"

"2. Does the estimate of $82,000,000 cover the cost of sufficient water supply to the proposed Barge Canal when the business is increased two fold or more as it should increase with the growth of the state?"

"3. Are all necessary bridges over the proposed canal provided for, and how many of each kind of bridges will be required?"

"5. Are all possible damages to private property provided for?"

"Any other information upon this subject, which the state engineer and surveyor may deem of interest and important that the Legislature and the people should know before they are called on to decide upon this question, he is respectfully requested to communicate to this Assembly."

Complying with these resolutions, the state engineer made an elaborate report, in which he said, among other things:

"It would seem pertinent, therefore, before taking up in detail the questions covered by the resolution, to touch briefly upon the methods adopted in the preparation of the Barge Canal report which I transmitted to the Governor on February 12, 1901. * * * The important questions of water supply, locks, bridges, and other permanent structures were made the matter of special study by the most expert engineers who could be obtained in these several lines."

Then follows a statement of reasons for increasing some of the estimates of cost by reason of advance in prices, etc.; such increases raising the estimated cost from $81,000,000 to $91,674,553. To the question, "Are all necessary bridges over the proposed canal provided for?" he answers "Yes." To the question, "How many of each kind of bridges will be required?" he answers, "For the Erie Canal, 15 farm bridges, 158 highway bridges, 43 city bridges, and 27 railroad bridges, or a total of 243 bridges; for the Oswego Canal, a total of 12 bridges; and for the Champlain Canal, a total of 50 bridges"— none of these being railroad bridges. Annexed to this report is a schedule covering the additions which the state engineer deems it necessary or advisable to make to the original estimate of $81,000,000, in order to cover the cost according to his revised estimate of this work and a few items referred to as not having been included in his original estimate, and the total cost of the Barge Canal improvement, as outlined in the bill then before the Legislature, including about $3,-

000,000 for railroad bridges, is given by the state engineer as $100,-562,993.

After receiving and considering this report, the bills then pending in each house of the Legislature were amended by increasing the appropriation to be made for this work to $101,000,000, and at the same session the bill was passed as so amended and became chapter 147 of the Laws of that year. The canal improvement provided for in this act is, in all essential particulars, the same improvement the expense of which was so estimated by the state engineer pursuant to the resolution of the Assembly.

With this history of the act before us, we come to the question as to the true intent and meaning of the clause in section 3:

"New bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals."

Section 3 is the section which describes in detail the work to be done. It begins as follows:

"Sec. 3. Within three months after issuing the said bonds or some part thereof the superintendent of public works and the state engineer are hereby directed to proceed to improve the Erie Canal, the Oswego Canal and the Champlain Canal in the manner hereinbelow provided."

Then follows a detailed description of the route of the canals; then a description of the dimensions of the canal prism; then the size and dimension of the locks and their method of construction; then the quoted provision in reference to bridges. Following this is a direction as to the dams required for the canalization of the different river sections of the three canals, and the section closes with directions as to the method of obtaining the necessary additional water supply.

Section 4 provides that:

"The state engineer may enter upon, take possession of and use lands, structures and waters, the appropriation of which for the use of the improved canals and for the purposes of the work and improvement authorized by this act, shall in his judgment be necessary."

Section 6 provides for letting all work by contract, and section 15 provides that the act shall not take effect until it has been submitted to the people and received a majority of all the votes cast for and against it at the next general election in November; the form of the question submitted to the people being:

"Shall chapter 147 of the Laws of 1903, entitled, 'An act,' etc., be approved?"

The act nowhere contains any direction to railroad companies to remove or alter their bridges, unless the above-quoted clause in reference to bridges is to be deemed such a direction. While the Legislature undoubtedly had the power to compel the railroads to reconstruct their bridges, in accordance with the requirements of this Barge Canal act, at their own expense, I find nothing in this Barge Canal act indicating an intent or purpose on the part of the Legislature to exercise such power. On the contrary, in view of the fact that the cost of altering the railroad bridges was a very considerable part of the

estimate which the Legislature had before it as the total cost of the work, and that that estimate was adopted and approved by the amount of the appropriation provided for by the act, I think the true construction and meaning of the act is that the state engineer and surveyor is directed to replace these bridges where necessary at the expense of the state. It is true that the act itself provides that only so much as shall be necessary of the amount of the appropriation shall be expended for this work; but the act nowhere in express terms or by necessary implication requires these bridges to be replaced at the expense of the railroad companies. On the other hand, it seems to have been the intent of the Legislature that the cost of this work should be borne by the state.

The question of public policy involved is one to be determined by the Legislature, and, if the legislative intent is clear, then it must control the courts and the state officers. The barge canal is not to be built for the benefit of the railroads. To a degree, it is hostile to their interests as a competitor in the carrying trade. The railroad companies are large property owners in the state, and will pay in the form of taxes a considerable part of the cost of this work, and in that view there was ground for urging upon the Legislature equitable consideration in favor of the payment by the state for the expense of necessary railroad bridge alterations. At all events, as it is reasonably clear that the Legislature intended to provide for the replacing of these bridges at the expense of the state, it must be held that the state officers are powerless to reverse that policy, even if it be now thought unwise and inequitable.

But it is contended that an appropriation of money by the state to build a new bridge for plaintiff's railroad would violate section 9 of article 8 of the Constitution, which provides:

"Neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation or private undertaking."

This position is not, in my opinion, well taken. The raising and reconstruction of plaintiff's bridge is not to be done as an aid to plaintiff. It is done as a part of a great public work for the state. Because the state may have the power to compel plaintiff to do this work, it does not follow that the state is proposing to do it as an aid to plaintiff. This work is similar in character to that involved in the improvement of railway grade crossings, at highways. There, the state no doubt has the power to compel railroad companies to construct at their own expense overhead or under crossings; but it is considered inequitable so to do, and we have general statutes providing for such work, partly at the expense of the state and partly of the railroads, and of the towns or cities interested. It has not been suggested, so far as I am aware—at all events, it has not been decided—that such contributions by the state are the giving of the money of the state in aid of a corporation or private undertaking.

It is also contended that to construe this act as requiring the state to pay for replacing this railroad bridge will render the act invalid under section 20 of article 3 of the Constitution, which provides that:

"The assent of two-thirds of the members elected to each branch of the Legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes."

The bill as printed in the Session Laws is stated to have been passed, "three-fifths being present." Assuming that two-thirds of the members elected to each house did not vote in favor of the passage of this bill, still I think it does not violate this provision of the Constitution. The work provided for in the bill is altogether of a public character. The clearing of the Seneca river from obstructions to its use for canal purposes is a part of the public purpose contemplated, and the railroad bridges in this respect cannot be treated differently from the highway bridges owned by the towns, or bridges along that river which the state officers are proceeding to rebuild at the expense of the state. Moreover, this question has been determined against the contention of defendants in the case of Waterloo Woolen Mfg. Co. v. Shanahan, 128 N. Y. 345, 28 N. E. 358, 14 L. R. A. 481. The Legislature had passed an act, which was under review in that case, entitled, "An act to provide for the dredging and excavating the channel of Seneca river and the old Bear race in the village of Waterloo to facilitate the passage of canal boats," and made an appropriation for that purpose. It appeared that the old Bear race was the private property of certain individuals, and it was contended that the real purpose of the act was to benefit individuals and not navigation. It was a three-fifths bill, and objected to under this provision of the Constitution as an appropriation for private or local purposes, which to be valid was required to be a two-thirds bill. The court held otherwise. In the course of the opinion of the court by O'Brien, J., it is said:

"The courts cannot determine upon the testimony of witnesses that the purpose of the Legislature was to appropriate public money for the benefit of an individual, when it has expressed its purpose in the bill itself to be the enlargement or improvement of the canal."

Having thus considered the principal questions presented, I am led to the conclusion that plaintiff is entitled to an adjudication protecting it in the maintenance of its bridge across the Seneca river until such time as defendants proceed to replace it as required by the Barge Canal act at the expense of the state.