## THE SILSBY MANUFACTURING COMPANY, Appellant, v. THE STATE OF NEW YORK, Respondent.

The act of 1813, incorporating the S. L. N. Co. (Chap. 144, Laws of 1813), gave to that corporation the right to use only so much of the waters of Seneca river, for the purposes of navigation on its canal, and forbade its use by it for any other purpose.

The State having acquired, under the act of 1825 (Chap. 271, Laws of 1825), "the stock property and privileges belonging or appertaining to" said company, and only that has no authority to use any more of the waters of said river than are necessary for the purposes of naviga-tion, and has the right to use them only for that purpose.

Upon trial, before the board of claims, of a claim for an unlawful diver-sion by the State of the waters of said river. it appeared that on account of defects in the locks, gates, walls, etc., of said canal more water was diverted from the river than the superintendent of public works, in the exercise of his discretion, required for the use of the canal and more than was necessary for navigation, and that if said structures had been in a condition not to leak, the claimant, a riparian proprietor and mill owner on the river, would have had the use of a portion of the surplus water so diverted. *Held*, that the claimant made out a case which would have created a legal liability as against an individual: and so, that under the act of 1870 (Chap. 321, Laws 1870), he was entitled to his damages, also, that the State was not the sole judge of the necessity and of the amount to be taken, but it was incumbent upon it to prevent leakage or other wastage to a more than fair and reasonable extent ; and that a finding of negligence on the part of any officer of the State was not necessary.

The diversion for which the claim was made was for the years 1882, 1883 and 1884. The claim was filed in August, 1884. *Held*, that the statute of limitations was not a bar to the claims for 1883 and 1884 , that each day the unlawful use was continued a new cause of action arose ; and that, as no recovery could be had for future damages, a failure to file a claim within the time limited by the statute, after the commencement of the unlawful diversion, had no effect on the rights of the claimant to recover damages sustained within the two years limited.

(Argued February 8, 1887, decided March 1, 1887 )

APPEAL from a decision of the board of claims March 14, 1886, awarding the claimant nothing, on a claim for damages alleged to have been sustained by reason of an unlawful diversion by the State of the waters of Seneca river.

The material facts are stated in the opinion.

*Theodore Bacon* for appellant.   In the absence of evidence to the contrary, the claimant, as riparian owner, is entitled to the natural flow of water in the Seneca river past its premises, without interference from State, corporation or individual. (*Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178 ; *Smith* v. *City of Rochester*, 92 id. 463.)   There was no warrant for the extensive invasion of the claimant's rights, of which it now complains.   (Laws of 1825, chap. 271 ; Laws of 1813, chap. 144.)   The plaintiff made out a clear case, entitling him to a recovery.   (*Sipple* v. *State*, 99 N. Y. 284, 289, 292.)

*Denis O'Brien*, Attorney General, for respondent.   The State having permanently appropriated the waters of the Seneca river for the use of the Seneca and Cayuga canal, by chapter 271 of the Laws of 1825, and also by the resolutions of the canal board and the acts of the canal commissioners, it has a superior right to the claimant to the waters of the river. (*Rexford* v. *Knight*, 11 N. Y. 308 ; *Germain* v. *Wagoner*, 1 Hill, 279 ; *Wagoner* v. *Germain*, 7 id. 357 ; *Varick* v. *Smith*, 5 Paige, 137 ; *People ex rel. Porter* v. *Tompkins*, 40 Hun, 230 ; *Mark* v. *State*, 97 N. Y. 572 ; 1 R. S., [7th ed.] 668–672.)   The State is not liable for a leakage which diminishes the quantity of water which would otherwise escape over the dam and into the natural bed of the stream, thereby diminishing the quantity of water the claimant might take from the stream and thus indirectly causing him injury.   (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 107.)   The claim is barred by the statute of limitations.   It was not filed within two years after the first diversion of water complained of took place.   There had been no change in the condition of the canal for many years.   (*Law* v. *McDonald*, 62 How. 340 ; *Porter* v. *Carp*, 22 Hun, 278 ; *Secor* v. *Sturgis*, 16 N. Y. 554 ; *Mark* v. *State*, 97 id. 580.)

PECKHAM, J.    The claimant, a manufacturing corporation, located at Seneca Falls, filed its claim against the defendant, in substance alleging itself to be a riparian owner of land adjoining the Seneca river or an 'island therein known as Dey's Island, and upon which it had erected valuable buildings, and that it was the owner of valuable water power and hydraulic rights by means of a water-way called Dey's race, and that it employed this water power as a motor to propel its machinery in its buildings.    It was further alleged that the State maintained and operated a 'canal known as the Cayuga and Seneca canal, which ran through the village of Seneca Falls, and the canal was divided into various levels by means of locks for the purpose of facilitating the passage of boats, etc.    That the State had built a wall of a proper height to protect navigation, and that where the locks, gates, levels and walls were in proper condition by being tight and secure the surplus water coming into the upper level spilled over this wall and over a dam and a portion thereof passed over a lower dam into Dey's race and became available to claimant as a motor to propel its machinery.    That in the years 1882, 1883 and 1884, the walls, locks, gates, levels, etc., were not kept by the State in a proper and tight condition to prevent leakage and wastage, and that large quantities of water wasted through these locks, gates and levels, and were diverted from Dey's race, and the claimant was thereby compelled to use steam instead of the water which otherwise would have flowed through Dey's race and have been used by it.    Damages to the extent of $3,500 per year for these years were claimed.    On the trial evidence was given tending to prove the facts above set forth, and the State in answer made the claim that it was entitled to the use of all the waters and that the claimant was only entitled to the use of such surplus as the State chose to give.    What the rights of the parties are is the question in contention in this case.

The claimant proved itself to be a riparian owner and entitled to the use of the waters in Seneca river, as such riparian owner, in their natural flow without any interference

from the State, except in so far as its rights had been legally altered by the action of the State. (*Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178; *Smith* v. *City of Rochester*, 92 id. 463.)

The right of the State to use the waters of Seneca river for canal purposes arises from two acts of the legislature and action taken under them.

The first act (Chap. 144 of the Laws of 1813), incorporated the Seneca Lock Navigation Company for the purpose of improving the navigation between the Seneca and Cayuga lakes. Power was given the corporation to take lands, goods, chattels and effects not exceeding ten thousand dollars in value, and any land for the purposes of navigation. The ninth section provided that "whenever the navigation shall be completed, any owner or occupant of any land adjoining the said outlet may use the waters for mills or other hydraulic works, but such use shall at no time impede the passage of boats or other water craft or articles, or injure or affect the navigation on the canals, locks or dams or appurtenances belonging to the said corporation. Provided, that nothing in this act shall authorize the said corporation to use any of the waters of said outlet for any other purposes than for the navigation aforesaid." Power is also given by the next section to the owners of mills to make cuts to conduct the water to their mills, so, however, as not to impede the navigation or "prevent the company from the use of so much water as at all times shall be necessary for the purposes of said navigation."

We think the meaning of this statute, taking the two provisions together, is that the company shall not use any of the waters for any other purposes than for navigation and only enough as shall be necessary for those purposes.

Stock was issued and the company went on and built its locks and constructed its works under this act.

In 1825 (Chap. 271), an act was passed authorizing the construction of the Cayuga and Seneca canal, the first section of which contained a proviso that the canal commissioners should not proceed in their duties under the act until the State should be invested with the right and title to the stock,

property and privileges of the Seneca Lock Navigation Company. Provision was made for acquiring such property, to wit, " the lands, waters, canals, locks, feeders and appurtenances thereto appertaining and claimed by the said company for the purpose of navigation under its act of incorporation, etc."

Upon payment, as provided for in the act, the State was to " be invested with all the stock, property and privileges belonging or appertaining to the said Seneca Lock Navigation Company."

This title, and this only, the State did subsequently secure. The board of claims found that the superintendent of public works has the entire control and management of all the canals, including the one in question, and that the amount of water to be used by the State is entirely a matter of discretion with him ; that he might use all the water if he deemed it necessary.

It was also found by the board that if the locks, gates, walls, etc., should be changed by the State more water might be saved and the quantity of surplus water, over and above that necessary in the discretion of the superintendent for the use of the canals, increased, and in that event the claimant herein would be entitled to its proportion of increase.

As conclusions of law the board found that the State owed no duty to the claimant herein in the increase of surplus water, and that the board had no power to review the discretion of the superintendent of public works in the amount of water he shall use in the management of the canal. The claim was, therefore, dismissed. Proper exceptions were filed to the findings of fact and conclusions of law. The board was requested to find, as a fact, what seems to have been established by uncontradicted evidence, viz., that if the locks, gates, etc., had been in such condition as not to leak, there would have been a saving of 5,250 cubic feet per minute; which but for such diversion would have passed into the race, and which was above the amount necessary for navigation. That the amount thus escaping, and some portion of which would have reached the flume of claimant, would produce fifty-five horse-power, which cost claimant $3,000 per annum.

The board refused to find these facts, and upon the finding of the board, as made by it, all these facts were immaterial and a refusal to find them entirely proper.

By chapter 321 of the Laws of 1870, the State provided for a recovery of damages sustained by any individual from the canals of the State and from their use and management, provided the facts proved made out a case which would create a legal liability against the State were the same established in evidence in a court of justice against an individual or corporation, and jurisdiction to hear such claims was conferred upon the canal appraisers, and that jurisdiction was transferred to the board of claims by the act chapter 205 of the Laws of 1883, § 13.

In relation to this act, assuming liability on the part of the State, this court has said, per RUGER, Ch. J., in *Sipple* v. *The State* (99 N. Y. 284–288), "the object in view was the protection of the citizen, and not the exemption from liability of the State; and it is quite evident that the State thereby intended to assume, with reference to the management of the canals, the same measure of liability incurred by individuals and corporations engaged in similar enterprises, and to afford to parties injured the same redress which they would have against individuals and corporations for similar injuries."

Judged upon this measure of liability, and by this standard, we cannot doubt that the board of claims erred in its construction of the relative rights of the parties to this controversy. The State had a right to all these waters for no other purpose than that of navigation, and only so much as should at all times be necessary for such purpose. We do not see upon what principle it can be said that the State was to be the sole judge of that necessity and of the amount to be taken. It succeeded only to the rights of the lock company, and it has not since acquired any other or different rights. If it desired more it could easily acquire more by the exercise of its right of eminent domain, but so far its rights must be decided as they exist in its character as successor to the rights of the lock company.

We do not believe that it would ever have been contended that the company was the sole judge of the amount necessary for its purposes of navigation. Undoubtedly the acts of the agents of the State, in the use of the water, would be entitled to a quite liberal construction. The question would not probably be, has the State used no more water than was absolutely necessary for the purposes of navigation, and have its gates and locks been kept up to the highest state of efficiency and in the best possible repair, and have the most effective appliances been used to guard against the leakage of water, but the inquiry would be whether, taking the whole facts into consideration, all the circumstances surrounding the case, the State had done what was fairly and reasonably incumbent upon it to do in the use of the water for navigation purposes, and in the prevention of leakage, or other wastage, to a more than fair and reasonable extent.

The exception of the claimant to the finding of fact, that the superintendent of public works had power to use all the water, etc., as above stated, possibly might not raise the question, for even on that assumption the State may not have used any more water than was reasonably sufficient under the circumstances. Hence the materiality of the facts which the claimant requested the board to find in regard to the amount of water which was diverted by leakage, and what could have been done with it by the claimant if it could have had the use of it.

Upon a new hearing the whole case will be open to investigation, and it will be for the board to decide, in view of all the facts, whether the State is using more water than is fairly and reasonably necessary for purposes of navigation, or is taking fair and reasonable precautions to prevent unreasonable waste of water not for navigable purposes.

The sections of the Revised Statutes called to our attention by the attorney general, are not, in our view, relevant. They refer generally to cases where the State has obtained the right to use all the water, unconditionally and absolutely, and lets the surplus under conditions provided for in the

statute.   They do not touch such a case ,as this where the State has no right to the use of the water for any but navigation purposes, and only for such as may be necessary for that purpose, and where the balance has never been taken from the original riparian owners.   But even the statute referred to by the attorney general expressly reserves the right of the owner of hydraulic privileges prior to any grant from the State, unless his damages for the loss of such rights are duly assessed and paid.   (1 R. S. [7th ed.] 669, § 84.)

It is not necessary that there should have been a finding of negligence on the part of any officer of the State, or a request to so find.   The exception to the finding as to the absolute discretion of the superintendent of public works, taken in connection with the refusal to find facts material to the issue as to unlawful use of the waters by the State, and the exception to such refusal, are sufficient to bring the question before the court.   And this first exception is noticed in the notice of appeal which is broad enough to permit the question to be raised and decided here.

The defense of the statute of limitations is made to the whole of the claim herein set forth.   The claim was filed in August, 1884.   It is good, undoubtedly, as to the claim for 1882.   We think it equally clear that it is not good for the other years, 1883, 1884.

If the proper facts upon which to base an action were found, it would then appear that the State had unlawfully used a certain amount of water, to the use of which the claimant had an undoubted right, and every day such use continued a new cause of action arose therefor in favor of the claimant.   Of course, when action was commenced all causes then existing would have to be included, but a recovery for the damages sustained, up to the time of the commencement of the action, would be no bar to those subsequently arising for subsequent unlawful diversions.

The diversion being unlawful, it is not to be presumed that it will be continued ; hence no foundation is laid for a recovery of damages that might be sustained in the future.   (*Uline* v.

*N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.) Besides the amount of the diversion is liable to vary from day to day, or hour to hour, and so wholly unstable would be the data that it would be entirely impossible to figure or reason upon the probable or possible amount of damage to accrue in the future.

As damages could not be predicated of the future, so a failure to sue for past alleged damages would have no effect upon the rights of the claimant within the period not barred, which in this case is by the statute stated to be two years. For the damages, if any, which claimant has sustained for the two years prior to the commencement of this action, it is entitled to recover, the question to be determined by the rules we have laid down and upon the facts which may then appear in proof. To give the claimant the opportunity of proving the necessary facts, and the defendant any answer there may be to the claim upon the principles here laid down, the award must be reversed and the case sent back to the board of claims to be reheard, costs to abide event.

All concur.

Ordered accordingly.