KANE *et al. v.* MANHATTAN RY. CO. *et al.*

*(Supreme Court, General Term, First Department.* December 31, 1891.)

1. EMINENT DOMAIN—ELEVATED RAILROADS—COMPENSATION TO ABUTTING OWNER.
   In an action for injury from an elevated railroad to easements of light, air, and access appurtenant to premises fronting thereon, the rear of which adjoins other premises owned by plaintiffs, in estimating the damage to the fee value of the property in question the advantages thereto from its connection with the adjoining property need not be considered, especially where no allowance is made to the owners for indirect damage to such adjoining property by obstruction of light, air, etc., to the property directly in question.

2. SAME—LIMITATION OF ACTIONS.
   Damages to the rental value may be allowed in such action, notwithstanding existing leases of the property were executed more than six years before the action. *Conkling* v. *Railway Co.,* (Sup.) 12 N. Y. Supp. 846, followed.

3. SAME—DAMAGES TO TIME OF TRIAL.
   In equitable actions for interference with such easements, damages to rental value may be computed to the time of trial, and interest on the sum awarded for fee value may be allowed until the time of payment of the award.

Appeal from a judgment on report of referees.

Action by Walter L. Kane, Delancey Astor Kane, and others against the Manhattan Railway Company and another to recover for damages to real estate. On trial by three referees, judgment was rendered for plaintiffs. Defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

*Davies & Rapallo,* (*Julien T. Davies* and *Herbert Barry,* of counsel,) for appellants. *Whitehead, Parker & Dexter,* (*Stanley W. Dexter,* of counsel,) for respondents.

BARRETT, J. This is one of the actions against these defendants commonly known as "land-damage actions." It presents but little that is new. The defendants claim that the referees erred in their award as to the injury to the fee value of the plaintiffs' easements. An examination of the record, however, shows that the report on this head was fully supported by the evidence. It also appears that a stipulation was entered into between the parties that the referees might view the property, and observe the obstruction and operation of the elevated railway in front of the plaintiffs' premises, and the effect thereof. It was further stipulated that the experience of the referees, together with such observation and the information thus obtained, should be taken as evidence in the case. The record also shows that the referees availed themselves of the privileges conferred by this stipulation, and actually viewed the property, and observed the construction and operation of the railway in front of the plaintiffs' premises, and its effects upon them. The report of the referees, under these circumstances, should be treated very much as that of commissioners of appraisal, and should not be disturbed, unless the award is grossly excessive, or unless the referees erred in matter of

principle. The only error on the latter head claimed by the defendants is this: that in estimating the fee value of the property taken the referees declined to consider the advantage derived by the rear of the plaintiffs' lot from its connection with other premises, belonging to the plaintiffs, upon the side street. The request which brings up this question reads as follows: "*Tenth.* In determining the value of plaintiffs' easements or their rights, taken or interfered with by the perpetual maintenance and operation of the defendants' elevated railway, including consequential damages to the plaintiffs from the taking of the same, the premises No. 64 Church street should be regarded as separate and distinct from the premises Nos. 35 and 37 Vesey street, *but in their present condition, and not as if separated by a party-wall or other division from the said premises Nos. 35 and 37 Vesey street.*" It is conceded that, although this request as a whole was refused, the referees acted upon the proposition therein embraced, except as to the words italicized. Thus the defendants' contention is that, in estimating the damage done to 64 Church street, the referees should have taken into consideration the benefits which it derived from its connection with 35 and 37 Vesey street. But these benefits, if considered at all, would simply have tended to appreciate the value of 64 Church street generally, not to lessen the depreciation caused by the maintenance of the defendants' structure. The depreciation thereby caused would be substantially the same, whether we start with one value resulting from connection with the Vesey-Street building, or another value resulting from the isolation of the Church-Street building. Again, the indirect damage to the Vesey-Street property was rigidly excluded. It was found that these premises had no share in the easements of light, air, and access over Church-Street, and that the damages must be confined to such as were occasioned to the latter property; that is, specifically to 25 feet fronting on Church street by 50 feet deep. It would therefore have been grossly inequitable to charge the plaintiffs with prospective benefits derivable from the connection of the two properties. The rear of the one property is at present the rear of the other, and thus the rear of the Vesey-Street property is necessarily more or less injured by the maintenance of the railway on Church street. The darkness on Church street was fairly offset against the light on Vesey street. The actual line of demarkation may be drawn at any time, and the plaintiffs' Church-Street lot (found, as above stated, to be 25 feet in front by 50 feet deep) completely walled in. All these matters were in the minds of the referees, and were properly considered. It was a somewhat embarrassing and difficult problem, but we think the referees have solved it fairly. They looked the whole situation over, and, after a personal inspection of the premises, made an award which seems to be fair and just, and we do not think it should be disturbed.

The defendants' second point, that the referees erred in awarding damages which accrued more than six years prior to the commencement of the action, is not borne out by the facts. The referees awarded no such damages. What the defendants desire to convey is that certain leases were executed prior to the six years in question, and that, consequently, the entire damages on that head accrued at the time such leases went into effect. The point with regard to the statute of limitations, made upon this state of facts, was directly decided against the defendants' contention in *Conkling* v. *Railway Co.,* (Sup.) 12 N. Y. Supp. 846.

The only other point calling for special consideration is the allowance for damages for injury to the rental value of the premises subsequent to the commencement of the action. This point was raised in the *Suarez Case,* (Sup.) 15 N. Y. Supp. 222; but it was not determined, as the defendants themselves there requested the court to find damages down to the time of the trial. We think, however, that the damages were properly allowed. Rulings to the contrary were in common-law actions. In equity, however, complete relief

is afforded, thus avoiding multiplicity of suits and circuity of action. To accomplish this, damages for loss of rental must be allowed down to the time of trial. Interest on the sum awarded for fee value, until that sum is paid, must also be allowed. If such damages were not allowed, there would be a gap which would necessitate a fresh action or a specific loss to the injured party. In *Madison-Avenue Baptist Church* v. *Baptist Church in Oliver Street*, 73 N. Y. 95, EARL, J., says: "It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and facts demands, and to bring such relief down to the close of the litigation between the parties." This statement of the law is quoted with approval in the *Henderson Case*, 78 N. Y. 438; and in *Barrick* v. *Schifferdecker*, 123 N. Y. 56, 25 N. E. Rep. 365, "the rental value to the time of the trial" was spoken of as—with a sum necessary to make certain repairs—covering the plaintiffs' damages. The principle is that, where a court of equity once has jurisdiction, it affords all the relief which the nature of the case demands; that is, complete relief,— relief which will end the differences between the parties. I see no difficulty, therefore, either upon principle or authority, in sustaining this award of damages down to the time of the trial. The judgment appealed from should therefore be affirmed, with costs.

VAN BRUNT, P. J.  This being an action in equity, I have concluded, upon a careful examination of the questions, that Mr. Justice BARRETT is correct in concluding that damages may be recovered down to the time of trial in these cases. The rule in actions at law is undoubtedly that damages can only be recovered up to time of commencement of actions, and that such action is no bar to recovery of damages for subsequent trespass, or for a counter-claim of the trespass, after the commencement of the action. *Uline* v. *Railroad Co.*, 101 N. Y. 98, 116, 4 N. E. Rep. 536; *Manufacturing Co.* v. *State*, 104 N. Y. 562, 11 N. E. Rep. 264; *Hambleton* v. *Veere*, 2 Saund. 169; *Bowyer* v. *Cook*, 4 C. B. 236; *Holmes* v. *Wilson*, 10 Adol. & E. 503. All these cases were actions at law to recover past damages. In them no recovery could be had for future damage. No rights could be acquired in those actions by which the trespass might be continued. In actions in equity of the kind of the one at bar, the trespass is treated as one to continue, and compensation for such continuance is awarded, and the right to continue acquired; hence it is proper that the whole of the rights of the plaintiff and defendant should be adjudicated upon and adjusted in one action, so that no new action may be necessary to protect the plaintiff for the damages sustained between the time of commencement of actions and time of trial. No right of action arising after the trial, I therefore concur.

DANIELS, J., concurs.