E. FOUGERA & COMPANY, INCORPORATED, Plaintiff, *v.* THE CITY OF NEW YORK and the DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Defendants.

CHARLES N. CRITTENTON COMPANY, a Corporation, Plaintiff, *v.* THE CITY OF NEW YORK and the DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Defendants.

HERMAN ROLFF PLANTEN, Trading under the Name and Style of H. PLANTEN & SON, Plaintiff, *v.* THE CITY OF NEW YORK and the DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Defendants.

First Department, July 13, 1917.

**Public health — municipal corporations — Sanitary Code, city of New York — invalid provision that owners of proprietary medicines shall register ingredients with board of health — ordinance not ratified by Legislature — power of court to protect trade secret — regulation requiring person to give evidence against himself for use in criminal proceeding — police power.**

While the department of health of the city of New York has power to enact a sanitary code, regulations made by it are open to attack on the ground of unreasonableness if they have not been specifically ratified by the Legislature. But a regulation enacted by the Legislature, or specifically ratified by it after enactment by the board of health, cannot be attacked upon the ground aforesaid.

Section 117 of the Sanitary Code adopted by the board of health of the city of New York and not ratified by the Legislature, which in effect requires manufacturers of proprietary or patent medicines either to print the formula of the medicine upon the package, or, if not so printed, to register the ingredients in the department of health where the informa-

tion is to be regarded as confidential and not open to inspection by the public or any persons other than the official custodian of said records and such persons as may be authorized by law to inspect the same, is invalid upon the ground of unreasonableness.

This, because the formula when kept as a trade secret is property which, in a proper case, may be protected by the court against an unauthorized disclosure, which is possible under the provisions of said Sanitary Code.

*It seems,* however, that it is not a valid objection to a law or ordinance properly within the scope of police power that its enforcement may incidentally injure or destroy a profitable business.

The court may declare said ordinance invalid although it relates only to the sale of medicines within the city of New York so that the proprietors of such medicines can deal freely elsewhere, for they are entitled to protection against even a partial interference with their business if unlawfully threatened.

As the purpose of said ordinance is to secure information upon which to base prosecutions for violations of the law forbidding the sale of certain habit-forming drugs, it is also invalid upon the ground that it requires a person to furnish evidence against himself for use in a criminal prosecution, it being admitted that, in the case at bar, the medicines of the plaintiffs contain no such ingredients in unlawful quantities.

The ordinance may be declared invalid upon the ground aforesaid even though some of the owners of the proprietary medicines are corporations.

SUBMISSIONS of controversies upon agreed statements of fact pursuant to section 1279 of the Code of Civil Procedure.

*Charles M. Russell,* for the plaintiff E. Fougera & Company, Incorporated.

*George W. Wickersham,* for the plaintiffs Crittenton Company and Planten.

*Terence Farley* and *John F. O'Brien,* for the defendants.

SCOTT, J.:

These three controversies all involve the same question, and are all submitted upon agreed statements of fact. The several plaintiffs are manufacturers or dealers in what are commonly known as proprietary or patent medicines, intended to be used internally. Many of these medicines have been in common use for years, so that their names have become familiar to the public. Their ingredients and the formulæ under which they are prepared are jealously guarded trade secrets and as such are considered to be of great value.

The judgment which each of these plaintiffs seeks is to

restrain the defendants from taking steps to enforce sections 116 and 117 of the Sanitary Code and the regulations adopted by the board of health to carry said sections into effect. It is conceded that the board of health has power to enact a Sanitary Code and that the sections above referred to, if valid, have all the force and effect of law. But while the board of health has authority to adopt sanitary ordinances, these particular sections of the Code have not been specifically ratified by the Legislature. They are, therefore, open to attack on the ground of unreasonableness, as they would not be if enacted by the Legislature, or specifically ratified by the Legislature after enactment by the board of health. (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459.)

Section 117, to which the plaintiffs particularly object, reads as follows:

" Sec. 117. Regulating the sale of proprietary and patent medicines. No proprietary or patent medicine manufactured, prepared, or intended, for internal human use, shall be held, offered for sale, sold, or given away, in the City of New York, until the following requirements shall, in each instance, have been met:

" The names of the ingredients of every such medicine, to which the therapeutic effects claimed are attributed, and the names of all other ingredients, except such as are physiologically inactive, shall be registered in the Department of Health in such manner as the Regulations of the Board of Health may prescribe.

" The expression ' proprietary or patent medicine,' for the purposes of this section, shall be taken to mean and include every medicine or medicinal compound, manufactured, prepared, or intended, for internal human use, the name, composition, or definition of which is not to be found in the United States Pharmacopœia or National Formulary, or which does not bear the name of all of the ingredients to which the therapeutic effects claimed are attributed, and the names of all other ingredients except such as are physiologically inactive, conspicuously, clearly, and legibly set forth, in English, on the outside of each bottle, box, or package in which the said medicine or medicinal compound is held, offered for sale, sold or given away.

" The provisions of this section shall not, however, apply to any medicine or medicinal compound prepared or compounded upon the written prescription of a duly licensed physician, provided that such prescription be written or issued for a specific person and not for general use, and that such medicine or medicinal compound be sold or given away to or for the use of the person for whom it shall have been prescribed and prepared or compounded; and provided, also, that the said prescription shall have been filed at the establishment or place where such medicine or medicinal compound is sold or given away, in chronological order according to the date of the receipt of such prescription at such establishment or place.

" Every such prescription shall remain so filed for a period of five years.

" The names of the ingredients of proprietary or patent medicines, registered in accordance with the terms of this section, and all information relating thereto or connected therewith shall   be   regarded   as   confidential,   and   shall not be open to inspection by the public or any person other than the official custodian of such records in the Department of Health, such persons as may be authorized by law to inspect such records, and those duly authorized to prosecute or enforce the Federal Statutes, the Laws of the State of New York, both criminal and civil, and the Ordinances of the City of New York, but only for the purpose of such prosecution or enforcement.

" This section shall take effect December 31, 1915." (See Cosby's Code Ord. [Anno. 1917] pp. 416, 417.)

It will be observed that this section requires, as to every proprietary or patent medicine held, offered for sale, sold or given away in the city of New York that the names of every ingredient, except such as are physiologically inactive, must either be made public by being clearly and legibly set forth in English upon the container in which the medicine is held, offered for sale, sold or given away, or that the names of all such ingredients shall be registered in the department of health.   It is not required that the quantity of each ingredient shall be registered, nor the formulæ used in combining the several ingredients, but it is admitted by the agreed case

that "The disclosure to plaintiff's competitors of the names of the physiologically active ingredients of the preparations * * * might enable such competitors to ascertain therefrom the proportion of the said ingredients and the method of combining them; that there is a possibility that by the disclosure of the names of such ingredients to the Department of Health, such competitors may secure the information thus disclosed; and that the revealing of such information to plaintiff's competitors would probably result in great damage and injury to plaintiff's manufacturers and the business of plaintiff in which it and said manufacturers have invested a large amount of money."

It is to this possible, and as the plaintiffs argue probable, disclosure of the secret formulæ to their competitors that the several plaintiffs most seriously object.    They insist that the proviso in the ordinance that "the names of the ingredients of proprietary or patent medicines, registered in accordance with the terms of this section, and all information relating thereto or connected therewith shall be regarded as confidential, and shall not be open to inspection by the public or any person other than the official custodian of such records in the Department of Health" and certain other persons in the public service, does not afford certain or adequate protection to their trade secrets, and it is admitted, by the clause quoted above from the agreed case, that complete protection cannot be assured if the ordinance be carried out. We may assume, therefore, that the enforcement of the ordinance will endanger and perhaps destroy the plaintiffs' trade secrets.

That such trade secrets are property, and are often very valuable property, and will in a proper case be protected by the courts against unauthorized disclosure, cannot be and is not denied (*Harvey Co.* v. *National Drug Co.,* 75 App. Div. 103; *Tabor* v. *Hoffman,* 118 N. Y. 30), and, under the concession contained in the agreed case, it is apparent that the enforcement of the ordinance may result in depriving the plaintiffs of their property by destroying the secrecy which alone gives value to their formulæ.    This is claimed to be forbidden both by the Federal and State Constitutions.

The ordinance, however, if it can be sustained at all, must

be so sustained as a legislative exercise of the reserved police power of the State and it is not a valid objection to a law or ordinance properly within the scope of the police power, that its enforcement may incidentally injure or destroy a profitable business. (*Reinman* v. *Little Rock*, 237 U. S. 171; *Hadacheck* v. *Los Angeles*, 239 id. 394.) The ordinance under consideration does not compel plaintiffs, or any one else manufacturing or dealing in patent or proprietary medicines to make public their secret formulæ. It merely forbids them to hold or deal in the medicines within the city of New York without publishing or registering their therapeutic ingredients. As to all the rest of the world they are left free to deal with them as they see fit. The effect of the ordinance cannot be, therefore, to utterly destroy the secrecy of the formulæ, unless plaintiffs elect to run the risk. The enforcement of the ordinance need not, therefore, utterly destroy the value of plaintiffs' cherished trade secrets, but merely reduce the opportunity to derive profits therefrom. Still the plaintiffs are entitled to protection against even this partial interference with their business, if it is unlawfully threatened.

This brings us to a consideration of the question whether or not the ordinance is a valid exercise of the police power. As has frequently been recognized by judicial authority, it would be almost, if not quite, impossible to lay down a definite, final rule, applicable to all cases, as to the allowable extent to which the police power may be used. The general rule upon the subject is, however, fairly well defined. In *Lawton* v. *Steele* (152 U. S. 133, 137) it was said by Mr. Justice BROWN, speaking for the Supreme Court of the United States, that " It must appear, *first*, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, *second*, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." And in *Colon* v. *Lisk* (153 N. Y. 188) our own Court of Appeals, after quoting the foregoing with approval, stated the same rule in the following language: The court declared (p. 197)

" that a law passed under the guise of the police power must tend towards the preservation of the lives, health, morals or welfare of the community, and the court must be enabled to see some clear and real connection between the assumed purpose of the law, and the actual provisions thereof, and that the latter tend in some plain and appreciable manner towards the accomplishment of the objects for which the Legislature. may use this power. [*Health Department* v. *Rector*, etc., 145 N. Y. 32, 39.]"

The subject of the manufacture, distribution and use of medicines and drugs is a very common and very appropriate one for regulation under the police power of the State, and at first blush it might appear that the ordinance under consideration should be held valid because it deals with that subject, and we have no doubt that the purpose of the framers of the ordinance was to protect the public welfare by preventing the sale of fraudulent remedies as to which more is promised than can be fulfilled and which may in fact be actually harmful. Such a purpose is laudable and its accomplishment within the power of the law-making authorities. There remains the question, however, whether or not this particular ordinance is " calculated and appropriate to accomplish that end," and this question is open to judicial scrutiny. The plaintiffs claim that it is not calculated and appropriate to achieve the purpose desired. It is argued by defendants that where a remedy is offered for sale to the public with the representation that it is calculated to produce certain therapeutic results, those to whom it is offered should be informed what ingredients it contains from which such results may be produced. The plaintiffs answer this argument by pointing out that the ordinance is neither calculated nor apparently intended to give such information to the public because it contains provisions, possibly inadequate indeed, but apparently designed to prevent this information becoming publicly and generally disseminated.

Another entirely laudable object to be obtained by regulatory legislation respecting medical preparations is to prevent the sale and use, in a disguised form, of habit-forming drugs, but as to each of the proprietary medicines dealt in by these plaintiffs it is expressly stipulated as one of the facts of the

case, that they contain no ingredients in violation of the provisions of the health laws of the United States or of the State of New York, and no greater quantity, if any, of opium, or morphine, or heroin, or codeine or chloral or its salts, than is expressly permitted by the laws of the State of New York.

It is stipulated in the agreed statement of facts as follows: "XXVII. That the admitted object of defendants in the enactment of said revised Sanitary Code and regulations is to secure information on which to base prosecutions for violations of law, if in their opinion the facts disclosed in accordance therewith shall so warrant."

In view of this concession, coupled with that provision of the ordinance itself which provides that the registered certificate of ingredients shall be open to the inspection of "such persons as may be * * * duly authorized to prosecute or enforce the Federal Statutes, the Laws of the State of New York, both criminal and civil, and the Ordinances of the City of New York, *but only for the purpose of such prosecution or enforcement,"* the plaintiffs strenuously argue that the ordinance is invalid, because it would force the persons required to file such certificate to furnish evidence against themselves for use in a criminal prosecution. (*People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236.) This appears to be a serious objection to the validity of the ordinance, for while it is true that the constitutional immunity from self-crimination does not extend to corporations, such as are two of the plaintiffs in these cases, the ordinance is not limited in its scope to corporations, but applies to natural persons, as well, if engaged in distributing proprietary or patent medicines, and we much doubt whether, if the ordinance is invalid as to individuals, it can be sustained as to corporations, for it is far from clear that the board of health intended, or would have been willing to so frame its ordinance as to make it inapplicable to one class of dealers in proprietary medicines, and applicable to others. (*James* v. *Bowman*, 190 U. S. 127; *Employers' Liability Cases*, 207 id. 463; *Hauser* v. *North British & Mercantile Ins. Co.*, 152 App. Div. 91; affd., 206 N. Y. 455.) To make such a discrimination would not only be unjust, but would practically destroy the efficacy of the ordinance.

We have not overlooked the case of *Savage* v. *Jones* (225 U. S. 501) upon which defendants chiefly rely to uphold the attacked ordinance. That case upheld the validity of a statute of the State of Indiana which required every person dealing, in that State, in " concentrated commercial feeding stuff " for domestic animals, to file with the State Chemist a statement containing, among other things, the ingredients from which the article was compounded and the minimum percentage of crude fat and crude protein, and the maximum percentage of fibre contained in the article to be sold. (Ind. Acts of 1907, chap. 206.) The statute thus upheld, however, differed in some important particulars from the ordinance we are now engaged in considering, and these, as the plaintiffs argue, serve to differentiate that case from the present.

Finally the plaintiffs insist that the ordinance and the regulations adopted by the board of health to enforce it conflict with articles 4, 11 and 11a of the Public Health Law of the State, which deal rather broadly with the same subject dealt with by the ordinance in question here. (See Consol. Laws, chap. 45 [Laws of 1909, chap. 49], arts. 4, 11, 11a,. as amd. by Laws of 1910, chap. 422; Laws of 1914, chap. 363, and Laws of 1915, chaps. 327, 502.)

Other objections are urged to the validity of the ordinance which it is unnecessary to discuss. For the reasons already stated we are of the opinion that the ordinance in its present form is legally objectionable and is invalid.

Judgment will, therefore, be entered in each case in favor of the plaintiffs therein as prayed for in the submissions, without costs.

CLARKE, P. J., LAUGHLIN, PAGE and DAVIS, JJ., concurred.

Judgment directed in each case in favor of plaintiffs as prayed for in the submissions, without costs. Orders to be settled on notice.