WILLIAM B. SACHS, Plaintiff, *v.* CLUETT, PEABODY & Co., INC., Defendant.

Supreme Court, Special Term. New York County, September 30, 1941.

*Herman Goldman,* for the plaintiff.

*Sullivan & Cromwell,* for the defendant.

SHIENTAG, J. This is a motion by the defendant to dismiss the complaint on the ground that the cause of action set forth therein is barred by the Statute of Limitations. The action is to compel an accounting by defendant of all profits claimed to have been made by it in the use and employment of a certain secret process which plaintiff alleges he discovered, and to restrain the defendant from further use of this process in violation of the agreement entered into between the parties.

The complaint sets forth that prior to 1921 plaintiff had developed a novel, original and useful principle for use in the shrinking of cotton cloth and other fabrics, and invented and constructed a novel and original machine useful in practicing this principle and in the shrinking of cloth. The plaintiff maintained this principle and his machinery in complete secrecy, although he made commercial use thereof which resulted in profits to himself. Plaintiff applied the trade name of " saxonizing " to the process and the cloths and fabrics which had been processed were referred to by him as " saxonized " cloths.

The complaint then alleges that prior to the year 1921 the defendant was engaged in the business of manufacturing shirts, collars and other garments of cotton cloth. In that year plaintiff informed the defendant that he had conceived and developed the principle before referred to. The defendant requested the plaintiff to subject certain sample quantities of cloth and fabrics furnished by the defendant to the " saxonizing " process and the defendant thereupon delivered to plaintiff such sample for processing so that the defendant might subject such processed cloth to inspection and tests. After inspecting and testing the cloth, defendant stated that it was interested in determining whether the " saxonizing " process could be economically employed.

In order to induce the plaintiff to disclose to the defendant the principle of plaintiff's process and the machinery used in connection therewith, and in consideration of such disclosure, the defendant agreed " to treat the principle so disclosed and the machinery so exhibited in the strictest confidence and would make no disclosure or use thereof or any part thereof for its own use or benefit or for the use or benefit of any other person, firm or corporation unless and until the plaintiff and the defendant would mutually agree on a basis of compensation which should be paid to the plaintiff by the defendant for and in respect to the use of said principle and said machinery or other machinery for utilizing said principle by the defendant and for or in respect to any other or different use or exploitation thereof by the defendant in and about its own business or in and about the business of others."

Pursuant to this agreement, the complaint continues, plaintiff disclosed his novel principle to the defendant and exhibited his machinery in the year 1921. Defendant, however, after receipt of the process and machinery stated that it was not interested in the " saxonizing " process and, therefore, defendant did not enter into any agreement with the plaintiff as to the payment of compensation for the defendant's use of similar machinery or of the process. On the contrary, in violation of plaintiff's property rights, the defendant surreptitiously set about the investigation of the process and the machinery and experimented therewith and devised various machines which employed the principle of " saxonizing." These machines differ from the machine which the plaintiff had exhibited to the defendant only in unessential details. Thereafter the defendant applied to the United States government and to foreign governments for letters patent covering the machines thus constructed by it. When the patents were obtained the defendant, in violation of plaintiff's rights and to the profit of the defendant, employed the " saxonizing " principle and the machinery covered by the patents in its own business. The defendant also licensed others to manufacture such machinery.

The complaint further alleges that the defendant persists in employing the " saxonizing " process, but refers to the process as " sanforizing " and continues to license others to use the name " sanforizing " and to use the machinery hereinbefore referred to. By obtaining the patents a disclosure of plaintiff's process has been made, so that upon the expiration of the patents the public will have the free right to employ the same and the value of plaintiff's invention and secrets will be lost. Accordingly, plaintiff seeks to compel the defendant to assign to him the patents which have been issued so that plaintiff may have the enjoyment thereof during the remaining life of the patents, to restrain the defendant from further use of the process and machinery, and for an accounting.

The defendant did not answer the complaint but moved on affidavits to dismiss it on the ground that it is barred by both the six- and ten-year Statute of Limitations. The defendant urges that plaintiff's action is one for breach of contract, and since the breach occurred in 1930 and the action was not commenced until January 29, 1941, it is outlawed by the statute.

The plaintiff, on the other hand, contends that while his rights originally arose out of contract, without which he would have had no cause of action at all, after the contract was made, he had fully protected himself, his secret process became clothed with all the incidents of a property right and there became available to him all remedies appropriate for the protection of that right. Plaintiff's

position is that his secret process and the secret machinery which he had devised, together with the trade name which he had applied to the process, constituted items of property such as the law will protect from infringement; that each separate infringement of this property by the defendant constitutes a separate wrong for which the plaintiff may maintain an action at law on the case against the defendant for damages; and that the continuance of these wrongs gave rise to succeeding causes of action, each of which may be barred by the Statute of Limitations within the prescribed period after the separate wrong is committed; that the plaintiff need not resort to a multiplicity of suits but, in order to avoid such, may at any time proceed with the injunction to restrain the defendant from committing further wrongs and recover from the defendant any profits made during the period not barred by the Statute of Limitations.

This motion presents two questions for solution: (1) What is the nature of plaintiff's right in the secret process? (2) What remedies, if any, are available to him?

1. I am of the opinion that the plaintiff has a property right in his secret process which equity will protect so long as he maintains complete secrecy with regard thereto. (*Tabor* v. *Hoffman*, 118 N. Y. 30; *Fougera & Co., Inc.*, v. *City of New York*, 178 App. Div. 824; affd., 224 N. Y. 269; *Jewelers' Mer. Agency* v. *Jewelers' Pub. Co.*, 155 id. 241; *Dr. Miles Medical Co.* v. *Platt*, 142 Fed. 606; *Herold* v. *Herold China & Pottery Co.*, 257 id. 911; *Peabody* v. *Norfolk*, 98 Mass. 452; *Salomon* v. *Hertz*, 40 N. J. Eq. 400; 2 A. 379.) The Appellate Division in the case of *Fougera & Co., Inc.*, v. *City of New York* said: " That such trade secrets are property, and are often very valuable property, and will in a proper case be protected by the courts against unauthorized disclosure, cannot be and is not denied." In *Herold* v. *Herold China & Pottery Co.* (*supra*) the Circuit Court of Appeals for the Sixth Circuit said: " The rule is well settled that secret formulas and processes, such as are claimed to be involved here, are property rights which will be protected by injunction, not only as against those who attempt to disclose or use them in violation of confidential relations or contracts express or implied, but as against those who are participating in such attempt with knowledge of such confidential relations or contract, though they might in time have reached the same result by their own independent experiments or efforts."

Furthermore, the courts have attributed to inventors or their transferees rights, privileges and obligations, which inhere in the owner of property. A secret process is assignable and transferable (*Simmons Medicine Co.* v. *Simmons*, 81 Fed. 163); it passes to the

executors and administrators of the deceased inventor or his transferee (*Peabody* v. *Norfolk, supra*); it is property within the meaning of statutes requiring that corporate stock may be issued only for cash or property (*Durand* v. *Brown*, 236 Fed. 609); it passes to the trustee in bankruptcy (*Matter of Cantelo Mfg. Co.*, 185 Fed. 276); it is property within the meaning of the income tax law (*Saunders* v. *Commissioner of Internal Revenue*, 29 F. [2d] 834); and it may not be taken by the State without due process of law. (*Fougera* v. *City of New York, supra*.)

The same rule applies to a trade name. (*American Washboard Co.* v. *Saginaw Mfg. Co.*, 103 Fed. 281; *Weener* v. *Brayton*, 152 Mass. 101; 25 N. E. 46.)

2. Only a voluntary disclosure will deprive the inventor of his right to restrain others from the use of his process. An inventor, however, may protect himself either by patenting his process or by contract. (*Bristol* v. *E. L. A. Society*, 132 N. Y. 264; *Rodriguez* v. *Western Union Telegraph Co.*, 259 App. Div. 224; *Lueddecke* v. *Chevrolet Motor Co.*, 70 F. [2d] 345.)

3. The important question to determine is whether plaintiff's sole remedy lies for breach of contract as contended by defendant. If the answer is in the affirmative, then plaintiff is barred by either the six- or ten-year Statute of Limitations. Plaintiff is not limited to an action for breach of contract. The fact that plaintiff would be unprotected upon voluntary disclosure of his secret process without having first made a contract, does not mean that when he has made a contract, he is limited only to an action for breach of that contract and may not pursue other remedies provided by law. (*Lightfoot* v. *Davis*, 198 N. Y., 261.) While the complaint refers to an agreement entered into between the parties, plaintiff in fact is not seeking to recover for breach of that agreement but for the continuing violation and infringement of his property rights in the secret process and in the trade name which he applied thereto.

Where a defendant by continuing acts infringes upon the property rights of another, the right to enjoin is not lost by lapse of time, notwithstanding that damages for or an accounting with respect to past infringements and violations are limited to the statutory period prior to the date of the commencement of the action. Each infringement by defendant gives rise to a cause of action for damages against that individual for infringement. (See *Roystone* v. *Woodbury Institute*, 67 Misc. 265; *Lampert* v. *Judge & Dolph Drug Co.*, 238 Mo. 409; *Warner* v. *Roehr*, 29 Fed. 266; *Philadelphia Extracting Co.* v. *Keystone Extracting Co.*, 176 id. 830; *Menendez* v. *Holt*, 128 U. S. 514; *Galway* v. *Metropolitan Elevated R. Co.*, 128 N. Y. 132; *Vanton Corp.* v. *New York Rapid Transit Corp.*, 250 App. Div.

484.) While the plaintiff's rights of property in his process and his trade name continue, his rights of legal action inhere.

In the *Galway* case (*supra*) plaintiff sought to restrain the maintenance of an elevated railroad adjacent to plaintiff's property which impaired his easements of light, air and access. The structure had been erected in 1878; suit was commenced in 1889. The defense was that the ten-year Statute of Limitations commenced to run against the plaintiff from the time that the plaintiff first became entitled to commence the action. The Court of Appeals rejected the defense and said: " The questions raised are answered by elementary principles established in this State by numerous reported cases. They are found in the two propositions that continuous injuries to real estate caused by the maintenance of a nuisance or other unlawful structure create separate causes of action barred only by the running of the statute against the successive trespasses, and the further principle that no lapse of time or inaction merely on the part of the plaintiff during the erection and maintenance of such structure, unless it has continued for the length of time necessary to effect a change of title in the property claimed to have been injured, is sufficient to defeat the right of the owner to damages."

In *Silsby Mfg. Co.* v. *State of New York* (104 N. Y. 562) the action was brought by a riparian owner to recover damages by reason of being deprived of waters from a canal operated by the State due to the failure of the State to keep certain locks, walls, gates, etc., in a tight condition in order to prevent leakage of water whereby the plaintiff was compelled to use steam instead of water power to operate the machinery contained in its mill. Damages were claimed for the years 1882, 1883 and 1884. The court held that the two-year Statute of Limitations barred any recovery of damages for 1882 but that the Statute of Limitations was not a bar to the recovery for the damages sustained in 1883 and 1884, the court saying (p. 569): " If the proper facts upon which to base an action were found, it would then appear that the State had unlawfully used a certain amount of water, to the use of which the claimant had an undoubted right, and each day such use continued a new cause of action arose therefor in favor of the claimant. Of course, when action was commenced all causes then existing would have to be included, but a recovery for the damages sustained, up to the time of the commencement of the action, would be no bar to those subsequently arising for subsequent unlawful diversions." (See, also, *Colrick* v. *Swinburne,* 105 N. Y. 503; *Reed* v. *State of New York,* 108 id. 407; *McLean* v. *Fleming,* 96 U. S. 245.) The principle running through all of the cases cited is that plaintiff's

cause of action to restrain future violations by the defendant of plaintiff's property rights is barred neither by the six- nor ten-year Statute of Limitations.

The cases cited by the defendant do not hold to the contrary. I do not find that any of them stands for the proposition that plaintiff's exclusive right is for breach of contract. These cases distinguish, on the one hand, between mere abstract ideas which are lacking in novelty or fail of reduction to practice or are of such character that the plaintiff himself is incapable of making use thereof, and, on the other, processes or formulæ which are new, novel and useful and which have been reduced to practice and are susceptible of use by the plaintiff himself without disclosure of the secret involved. Plaintiff's cause of action falls within the latter classification. The distinction between the cases cited by the defendant and the instant case has been made clear in *Haskins* v. *Ryan* (71 N. J. Eq. 575; 64 A. 436). There the plaintiff had conceived the idea of merging or amalgamating all of the principal lead companies in the country which had not already been consolidated into the National Lead Company. He obtained options on some of the plants and entered into negotiations for the procurement of options on others. He did not have the means to pay for the plants or to carry through the plan. He presented his scheme to the defendant in that case, with the suggestion that they jointly carry through the promotion of this scheme and share the profits between them. Defendant investigated the plan and then proceeded to carry it through without giving any recognition at all to the plaintiff. The plaintiff instituted suit for an accounting of the defendant's profits and for an apportionment to the plaintiff of a part thereof. The court, in denying relief, distinguished such an idea from a secret process, using the following language: " Such a project or idea can scarcely be called property. It lacks that dominion — that capability of being applied by its originator to his own use — which is the essential characteristic of property. It differs fundamentally from the secret process or patented invention which is capable of material embodiment at the will of the inventor alone. It is worthless unless others agree to give it life. It was, as far as complainant was concerned, an idea pure and simple. Now, it has never, in the absence of contract or statute, been held, so far as I am aware, that mere ideas are capable of legal ownership and protection."

The complaint alleges that with respect to the " saxonizing " process there existed all of the elements which are required to constitute the invention property in the hands of the plaintiff. It was new; it was useful, and it was capable of being used and

was used by plaintiff. Whether the plaintiff will be able to establish all of these allegations remains for the trial. On this motion the pleading is liberally construed and all of its allegations assumed to be true.

Accordingly, the motion to dismiss the complaint is denied. Order signed.