**Brian S. JONES, as Receiver for Permadent Products Corp., Plaintiff,**

v.

**CERAMCO, INC., a corporation of the State of New York, et al., Defendants.**

**No. 74 C 467.**

United States District Court, E. D. New York.

July 24, 1974.

Rubens & Berger, New York City, for plaintiff.

Morgan, Finnegan, Durham & Pine, New York City, for defendants.

### Opinion

PLATT, District Judge.

Defendants move to dismiss the complaint herein contending that the first claim for patent infringement is barred under the doctrine of estoppel and laches and the second claim for breach of confidential relationship by defendant employees with the plaintiff and misappropriation of plaintiff's trade secrets is barred by the New York statute of limitations and also by the doctrine of equitable estoppel and laches and further that plaintiff has no trade secrets because any and all of the same have been publicly disclosed in plaintiff's patent issued and published on September 11, 1962.

With respect to the first claim, it is undisputed that the patent claimed to be infringed was issued and published on September 11, 1962 and that plaintiff's action for such infringement was not commenced until March 22, 1974, over eleven and a half years later.

With respect to plaintiff's second claim, it is conceded that the five individual defendants left the plaintiff's employ in April of 1959 and founded the defendant CERAMCO, INC. which company thereafter competed directly with the plaintiff by manufacturing, selling and distributing the same material as used in plaintiff's tooth construction.

Plaintiff further alleges in his second claim in his complaint that the individual defendants conspired prior to leaving plaintiff to commit industrial piracy and that shortly thereafter and as a consequence of defendants acts, plaintiff's business diminished, plaintiff filed a Chapter XI petition in bankruptcy and defendants' corporation's business profited and was sold to Johnson and Johnson. More specifically in this connection, plaintiff alleges that defendants wrongfully appropriated plaintiff's trade secrets, wrongfully removed and converted plaintiff's information, documents and materials to their own use, abridged their contractual and fiduciary obligations to the plaintiff, appropriated plaintiff's inventions, performed additional acts of unfair competition and have been unjustly enriched by reason of their malfeasance. All of these acts initially took place in 1959 and 1960 but plaintiff maintains that the defendants wrongs are "a continuing tort" with respect to which plaintiff is entitled to relief.

As to both claims, plaintiff contends that since the acts of the defendants "materially contributed to the demise of Permadent Products Corp., and as a result thereof, the Chapter XI petition was filed," defendants should not profit from their wrongdoing and hence the doctrines of estoppel and laches should not be held applicable to plaintiff's claims herein.

In defense of plaintiff's delay as Receiver in the commencement of this action against violation of plaintiff's patent and trade secret rights, plaintiff claims the existence of a cloud on his title to the patent in suit until April 20, 1972, and sets forth the following facts in support of such contention.

PERMADENT PRODUCTS CORP. was founded in January, 1953, by John Weber under the original name of PERMADENT LABORATORIES AND PERMADENT PRODUCTS and was renamed in 1958. A year later in 1959 PERMADENT PRODUCTS CORP. ("PRODUCTS") entered into an agreement with PERMADENT MANUFACTURING CORP. ("MANUFACTURING") by which the latter acquired all the assets of said PRODUCTS in return for an agreement in which MANUFAC-

TURING would manufacture and PRODUCTS would sell dental supplies and in which both parties would share income derived from such manufacture and sales.

On March 9, 1960, MANUFACTURING served notice of termination of said agreement to take effect 60 days thereafter. On May 7, 1960, PRODUCTS filed a petition in the U.S. District Court for the Southern District of New York under Chapter XI of the Bankruptcy Act "and for all practical purposes the operations of PERMADENT PRODUCTS CORP. ceased at that time".

Thereafter, on October 4, 1960, an attorney acting for creditors of PRODUCTS filed a lawsuit attacking the 1959 bulk sale transfer made under the agreement between PRODUCTS and MANUFACTURING and on April 6, 1961, plaintiff was appointed the Temporary Receiver of PRODUCTS which appointment was attacked and not made permanent until April 1, 1963.

The action to set aside the bulk transfer was prosecuted successfully through the Court of Appeals of the State of New York and an order was entered directing that all assets be retransferred back to the plaintiff as Receiver. As a result thereof a stipulation was made and entered between the parties and others which was ultimately approved by order of the Supreme Court, New York County, entered on May 25, 1966.

It is significant at this point to note that from and after this date there appears to have been no impediment to the Receiver's prosecution of its second claim herein (the trade secrets claim) except for the Receiver's alleged lack of funds to do so.

With respect to the patent in suit No. 3,052,982, the Receiver maintains that it is based upon an application filed on October 15, 1959, having Serial No. 846753, and that that application was assigned by the inventors to one Abraham B. Weinstein ("Weinstein") who in turn assigned the patent after it was issued on September 11, 1962 to PRODUCTS. Application 846753 was in large part, the plaintiff claims, based on two prior patent applications filed in the United States Patent Office having Serial Nos. 479804 and 348838. The inventors of the earlier applications were identical to the inventors in the application with Serial No. 846753 which allegedly matured into the patent in suit. These inventors in the earlier application Nos. 479804 and 348838 in an agreement dated July 22, 1959, assigned their rights to Weinstein who in turn assigned his rights therein to MANUFACTURING.

As a result of these transfers, one to PRODUCTS and the other two to MANUFACTURING, the Receiver claims that there existed a cloud on his title to the patent in suit so that he could not assert title in seeking to enforce the rights of PRODUCTS.

In support of these contentions in this respect the Receiver points out that "subsequently David Bromberg, Trustee in Bankruptcy for the Estate of Weinstein, asserted that the transfer of title by Weinstein to PRODUCTS of the patent in suit was defective and threatened to contest title", and to two letters from attorneys dated respectively November 7, 1968 and January 27, 1969, confirming the existence of the alleged cloud on the Receiver's title to the patent in suit.

As a consequence of all of the foregoing, the Receiver avers that he entered into settlement negotiations with all the interested and aggrieved parties "so as to effect proper title and be able to enforce all rights of" PRODUCTS and these negotiations resulted in settlement agreements which were approved by an order of April 20, 1972 of the Supreme Court, New York County, which finally conferred on him on that date "free and clear title to the patent in suit".

In view of the foregoing, the Receiver maintains that he has "acted in a most diligent fashion in seeking to enforce the rights of PERMADENT PRODUCTS CORP., including those rights assignable to the patent rights, both Unit-

ed States and foreign, and to the trade secret rights and also as a result thereof he was "successful in arranging of the financing of protection" for all such rights.

 While the Court is mindful of, and troubled by, the amount of time that has elapsed during which no action has been taken against the alleged infringers, nonetheless the Receiver's problems and difficulties in perfecting clear title to the patent in suit appear to have been substantial and real and he has moved with reasonable dispatch since his title has been perfected and cleared. Taylor Engines, Inc. v. All Steel Engines, Inc., 192 F.2d 171 (9th Cir. 1951), Berry v. Bohn Aluminum & Brass Corp., 29 F. Supp. 516 (E.D.Mich.1939), Skinner v. Dow Chemical Co., Inc., 90 F.Supp. 877 (E.D.Mich.1950). Accordingly, this portion of defendants' motion is denied.

As indicated above, however, the same does not hold true with respect to the second part of defendants' motion addressed to the trade secrets claim. Here the alleged wrong occurred in and shortly after April of 1959. A whole year or more elapsed before PRODUCTS filed its petition under Chapter XI during which no steps were taken to restrain the alleged wrongdoers. Moreover, from and after May 25, 1966 the Receiver was free to serve and file a summons and complaint. His claim of lack of finances to institute such an action is not an excuse for inaction for a period of eight additional years.

The New York Statute of Limitations (three years for injury to property CPLR Section 214(4) and six for contractual obligations express or implied CPLR Section 213(2)) appear to be a complete bar. Monolith Portland Midwest Co. v. Kaiser Aluminum, 407 F.2d 288 (CA 9, 1969); Shatterproof Glass Corp. v. Guardian Glass Co., 322 F.Supp. 854 (D.C.Mich.1970); E. I. duPont de Nemours Powder Co. v. Masland, 244 U. S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; Epstein v. Dennison Mfg. Co., 314 F.Supp. 116 (D.C.S.D.N.Y.1969); Heyman v. Ar.

Winarick, Inc., 325 F.2d 584 (CA 2, 1963). But compare Sachs v. Cluett Peabody & Co., 177 Misc. 695, 31 N.Y.S. 2d 718, reversed on other grounds 265 App.Div. 497, 39 N.Y.S.2d 853; General Precision, Inc. v. Ametrek, Inc., 26 A.D. 2d 909, 274 N.Y.S.2d 340; Koehring Co. v. Nat'l Automatic Tool Co., D.C., 257 F.Supp. 282. But even if they are not, the claim should be barred under the doctrine of equitable estoppel and laches. Defendants' motion to dismiss the second claim of the complaint herein is therefore granted.

Settle order on notice.